Brown *v.* Davis.

---

# RICHARD BROWN, Respondent, *v.* E. S. DAVIS, Appellant.

The County Recorders who, under Section 32 of Article IV. of the Constitution, become *ex officio* Auditors, are those only who are elected under a legislative enactment passed after the adoption of the Constitution. The fact that a Recorder is elected after the adoption of the Constitution, but not under a law passed after its adoption, will not entitle him to the position of Auditor.

The rule is cardinal and universal that if a law is plain and unambiguous, there is no room for construction or interpretation.

In the construction of a statute the intention of the Legislature is the primary object to be ascertained, but to ascertain it recourse should first be had to the language employed, and if that be plain and unambiguous the Courts must give it its strict and grammatical construction.

APPEAL from the District Court of the Seventh Judicial District, State for Nevada, Lander County, Hon. W. H. BEATTY presiding.

The defendant, E. S. Davis, was duly elected County Recorder for the County of Lander on the 8th day of November, A. D. 1864, and entered upon the discharge of his duties on the 2d day of January, A. D. 1865. On the same day he duly qualified as Auditor of Lander County, which office he claimed to exercise by virtue of being Recorder. He received the books and papers of the Auditor's office, and discharged its duties up to the time of the bringing of this action.

The plaintiff, Richard Brown, was duly elected County Clerk of Lander County on the 8th day of November, 1864, and duly qualified and entered upon the discharge of the duties of his office on the 2d day of January, A. D. 1865, and on the 26th day of January he duly qualified as Auditor of that county, claiming that he was entitled thereto by virtue of his office of County Clerk.

As the law existed prior to the adoption of the State Constitution, the County Clerks were *ex officio* County Auditors. It was claimed by the defendant in this proceeding that the Constitution superceded that law and transferred that office to the County Recorders. Section 32, Article IV. of the Constitution, under which this claim is made, reads as follows : " The Legislature shall provide for the election by the people of a Clerk of the Supreme Court, County Clerks, County Recorders, who shall be *ex officio* County Auditors, District Attorneys, Sheriffs, County Surveyors, Public Administrators and other necessary officers, and fix by law their duties and compensation."

*Ashley* and *Garber & Hupp*, Attorneys for Appellant.

The policy of the Constitution is to separate the office of County Clerk and that of Auditor. (Art. IV., Sec. 32.)

It is also the policy of the Constitution to have all county officers elected and installed before its adoption, to enjoy their rights and to exercise their powers during the whole term of their respective offices. (Art. XVII., Sec. 13.)

The general policy of the Constitution should be subserved by favorable and benign construction. (Broom's L. Max. 237.)

The Constitution takes effect of its own vigor, and is not dependent on the rule of the Legislature. And in the Constitution, a code of laws was adopted, but those parts inconsistent with the Constitution declared null. (Art. XVII., Sec. 2.)

The mode and time of an election may depend on legislation (11 Cal. 49; 12 Cal. 378, 394), but so far as this case is affected, the necessay legislation is contained in the Constitution, Article XVII., Section 13, and in the laws adopted (Art. XVII., Sec. 13), and the action of the Convention and the vote of the people constitute the highest of legislative Acts.

The case of *Vesey* v. *Hermann*, 1 Nev. Rep., is not similar to this, in that both defendants were elected before the Constitution took effect, and so Hermann was protected in the Auditorship by Section 13 of Article XVII. of the Constitution. And, in fact, the turning point of the case was, that Hermann should not be deprived of a right he held at the adoption of the Constitution. In this case both parties were elected under the Constitution and by virtue of its provisions (Art. XVII., Sec. 13), and legislative enactments duly adopted and in force. (Art. XVII., Sec. 2.)

It matters not when the enactments prescribing the mode of election was passed, it is of consequence only that at the time of election its mode was provided for by legislative authority.

The language used in the decision of a case must be read in view of the facts of the case itself, in order fully to understand its meaning and scope. Unless so read, great injustice is often done a Court by seeking to apply its language to a different state of facts, thus destroying and misapplying principles, which, as enunciated and applied to the facts of the first case, were clear and definite. Hence the distinction to be drawn between this case and that of *Vesey* v. *Hermann*, wherein the facts were entirely different.

The meaning of the Constitution is that County Recorders shall be elected in the manner provided or to be provided by legislative Act. The effect of that election to make the Recorder Auditor, depends on the Constitution, and is irrevocable.

The Constitution applies to all Recorders elected after its adoption, and the Recorder becoming Auditor does not depend on an Act to be passed otherwise as the territorial law continued in force, and prescribes the *manner* of election.

The State Legislature, by simply allowing the " old law " to stand, may, for fifty years, defeat the constitutional provision in question.

*Labatt & Wren*, Attorneys for Respondent.

The County Clerks, under the territorial laws, were *ex officio* county officers.   (Session's Laws 1862, p. 148, sec. 48.)

Section 2 of the schedule of the Constitution provides that " all laws of the Territory of Nevada, in force at the time of the admission of this State, not repugnant to this Constitution, shall remain in force until they expire by their own limitations, or be altered or repealed by the Legislature."

The enjoyment of the office of Auditor by the Clerk, and the discharge of the duties of the office until the election of a County Recorder, who shall be *ex officio* Auditor under a law to be passed by the Legislature, is not repugnant to the Constitution.   It is the policy of the Constitution not to make any change in the Auditorship until a Recorder is elected under a law to be passed by the Legislature defining his duties.

That portion of Section 32 of Article IV. of the Constitution in relation to County Recorders, only applies to those to be elected under a law to be passed by the Legislature. ( *Vesey* v. *Hermann*, 1 Nev. Reports.)

The construction of the provisions of the Constitution on this point in *Vesey* v. *Hermann* is so plain that no doubt can exist as to those officers in Lander County.   Although by the schedule, they were elected at the November election, yet the Constitution provides that the change in the Auditorship shall only affect the office of the Recoder, under a law to be passed to that effect, and the County Clerk of Lander acting as *ex officio* Auditor makes the office uniform in the State, whereas a contrary rule would violate the annunciation of the law in *Vesey* v. *Hermann*, and create a distinction in Lander County, where such is not the intention of the provisions in the schedule of the Constitution.

The judgment of the Court below in favor of the relator should be affirmed.

Opinion by LEWIS, C. J., BEATTY and BROSNAN concurring.

In the case of *Vesey* v. *Hermann* this Court held that the Recorders who, under Section 32 of Article IV. of the Constitution, become *ex officio* County Auditors, are those only who are elected under a legislative enactment passed after the adoption of the Constitution; that the Constitution clearly has reference only to Recorders elected by virtue of some law *passed after its adoption.* This is unquestionably the strict and grammatical construction of the section referred to. It declares that the Legislature *shall* provide for the election of County Recorders, who shall be *ex officio* County Auditors. Strictly, this language can have reference only to Recorders elected under a law to be passed at some time in the future with respect to the adaptation of the Constitution. It is claimed by counsel for appellants, however, that, as the plaintiff and defendant in this proceeding were elected to their respective positions after the adoption of the Constitution, this case does not come within the reasoning of the case of *Vesey* v. *Hermann;* that by the adoption of the Constitution, all the laws of the Territory of Nevada not repugnant to it, were also adopted as the laws of the State, and that the election of the appellant to the office of Recorder under the law so adopted, brought him within the spirit of the 32d section, and made him *ex officio* Auditor. If we depart from the strict literal construction of the section, we will find it difficult if not impossible to say what the intention of the framers of the Constitution was. The election of an individual under a law existing at the time the Constitution was framed, is certainly not within the literal meaning of the provision referred to. The language employed in the Constitution is clear and explicit, and whatever may have been the intention of its framers, we cannot look beyond that language when it is free from all ambiguity.

"The rule is cardinal and universal that if the law is plain and unambiguous, there is no room for construction or interpretation."

In *Fisher* v. *Blight* (2 Cranch. 358), the Supreme Court said : "Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction."

Again the same Court said:

" In construing these laws it has been truly stated to be the duty of the Court to effect the intention of the Legislature ; but this intention is to be searched for in the words which the Legislature has employed to convey it." In the case of *Notley* v. *Buck* (8 Barn. and Cres. 160, 164), Lord Tenterden said: "The intention of this Act certainly was to prevent voluntary preferences ; the words may probably go beyond the intention ; but if they do, it rests with the Legislature to make an alteration—the duty of the Court is only to construe and give effect to the provision." The same learned Judge, in *Branding* v. *Barrington* (6 Ib. 467, 475), used the following language: " Speaking for myself alone, I cannot forbear observing that I think there is always danger in giving effect to what is called the equity of a statute, and that it is much safer and better to rely on and abide by the plain words; although the Legislature might possibly have provided for other cases had their attention been directed to them."

And Bagley, J., in delivering the opinion in the case of *The King* v. *Inhabitants of Stake Damerel* (7 Barn. and Cres. 563), said: "I do not know how to get rid of the words of this section of the Act of Parliament, and where the Legislature, in a very modern Act of Parliament, have used words of a plain and definite import, it is very dangerous to put upon them a construction the effect of which will be to hold that the Legislature did not mean that which they have expressed." So Tindell, C. J. (531), said : "It is the duty of all Courts to confine themselves to the words of the Legislature—nothing adding thereto, nothing diminishing." The intention of the Legislature is the primary object to be ascertained in the construction of a statute; but how is that to be done ? Recourse should first be had to the language employed, and if that be clear and explicit, and there be nothing *de hors* the statute which would occasion uncertainty, the Courts must give that

language its strict and grammatical construction.    (Sedgwick on Statutory and Constitutional Law, 243.)

There is certainly no ambiguity in the language employed in the section of the Constitution under consideration, nor is there any circumstance that we are aware of from which it can be inferred that the framers of that instrument did not intend exactly what they have expressed in section 32.    If we abandon the strict letter, and endeavor to look for the reasons or the policy which induced its adoption, we become at once involved in perplexing doubts and uncertainties ; for the argument that it was the policy merely to allow all persons in office at the time of the adoption of the Constitution to continue so, and that as the plaintiff and defendant were elected afterwards, they do not come within the object sought to be attained by the Constitution, may be answered by the fact that it was also the policy of the Convention to make the system of county and township governments uniform throughout the State, and that that system should go into operation at the same time in all the counties of the State.

We, therefore, think it our duty to adhere to the strict and grammatical construction which was adopted in the case of *Vesey* v. *Hermann.*

Judgment affirmed.