[Civ. No. 1530.   Third Appellate District.—May 3, 1916.]

# B. F. GWYNN, Petitioner, v. C. D. McKINLEY, as Auditor, etc., Respondent.

Justices of Peace—Compensation in Counties of Thirty-first Class —Amendment to County Government Act — Correction of Inadvertent Omission of Previous Legislature—Constitutional Law—"Compensation" not Increased.—The amendment made by the legislature of 1915 to the County Government Act providing for the compensation of justices of the peace of counties of the thirty-first class (to which the county of Placer belongs), enacted to rectify the effect of an oversight of the legislature of 1913 to make any provision for the compensation of such judicial officers of counties of such class, does not involve an increase in the compensation of such officers within the meaning of section 9 of article XI of the constitution, as such enactment became necessary after the adoption of the amendment to section 15 of article VI of the constitution in 1911, whereby judicial officers were prohibited from reserving to their own use any fees or perquisites of office, which, prior to such amendment to the constitution, constituted their only source of compensation.

ID.—COMPENSATION OF PUBLIC OFFICER — ACT PROVIDING FOR INADVER-
TENT OMISSION—COMPENSATION NOT "INCREASED."—An act whose
purpose is merely to correct an inadvertence, and to provide for the
compensation of a public officer where no compensation had thereto-
fore existed, does not amount to an "increase" in compensation.

APPLICATION for a Writ of Mandate originally made to
the District Court of Appeal for the Third Appellate Dis-
trict, requiring a county auditor to draw his warrant in favor
of petitioner for his compensation as justice of the peace.

The facts are stated in the opinion of the court.

Lee Gray, for Petitioner.

Meredith, Landis & Chester, for Respondent.

HART, J.—This is an original application to this court for
a writ of *mandamus* requiring the respondent, as auditor of
the county of Placer, to draw his warrant in favor of the peti-
tioner for the salary or compensation of the latter as justice
of the peace of township No. 3 of said county for the month
of January, 1916.

The petition alleges that the petitioner is, and was, since the
first day of January, 1915, the duly elected, qualified, and
acting justice of the peace of said township; that the salary
provided by law of said justice of the peace is nine hundred
dollars per annum, payable in the same manner and out of the
same funds as county officers are paid, and that the respondent,
as auditor of said county, has refused to draw his warrant
in favor of the petitioner for the said month of January, 1916,
and still refuses so to do.

The respondent has demurred to the petition generally, and
thus the question to be decided is raised.

It appears that the petitioner and all other justices of the
peace of Placer County were elected to said offices at the gen-
eral state election held in November, 1914, and entered upon
the discharge of their duties as such justices on the first day
of January, 1915, their terms of office being four years.

Prior and up to January 1, 1915, the compensation of jus-
tices of the peace in Placer County was by way of fees only.
(Stats. 1907, p. 498; Stats. 1909, p. 382; Stats. 1911, pp. 207,
655.)

At an election held on October 11, 1911, the people adopted an amendment to the constitution proposed by the legislature of 1911 (Stats. 1911, p. 2161), whereby sections 1, 5, 11 and 15 of article VI of said instrument were changed in certain particulars. Section 15 as amended reads as follows: "No judicial officer, except court commissioners, shall receive to his own use any fees or perquisites of office; provided, that justices of the peace now holding office shall receive to their own use such fees as are now allowed by law during the terms for which they have been elected."

It will be observed that the operative effect of the said amendment was suspended as to the terms of the justices of the peace existing at the time of the adoption thereof—that is, section 15 as amended was not to apply to justices of the peace until after the expiration of the then existing terms of said officers or, in other words, its operation was suspended until January 1, 1915.

The legislature of 1913 (the first session of that body after the adoption of the above amendment to the constitution) made no provision in the County Government Act or otherwise for the compensation of justices of the peace of Placer County. The result was, obviously, that when the petitioner and all the other justices of the peace of said county took charge of their offices in January, 1915, there was no compensation allowed them by law in any form, and they were, therefore, required to perform the services demanded of them as such officers without pay or compensation.

The legislature of 1915 amended in a number of particulars the County Government Act in so far as it applies to counties of the thirty-first class to which Placer County belongs. (Stats. 1915, p. 323.) Section 13 of said act as so amended provides for the classification of townships in counties of the thirty-first class, according to population, for the purpose of fixing the compensation of justices of the peace of counties of said class according to their duties, and further provides that, for the purposes of such classification, the population of such townships shall be determined by the board of supervisors, such determination to be arrived at by multiplying by three the number of registered voters at the last general election next preceding the date of such determination. (Stats. 1915, p. 325.)

The section further provides: "Justices of the peace shall receive the following salaries: In townships of the first class, the sum of nine hundred dollars for the period beginning with the date upon which this act becomes effective and ending December 31, 1915, and thereafter a salary of nine hundred dollars per annum. . . . Such salaries shall be paid in the same manner and out of the same fund as the salaries of county officers are paid and shall be compensation in full for all services rendered. All fees received by justices of the peace shall be paid into the county treasury every month."

The County Government Act of 1915 was approved by the Governor on the third day of May, 1915. The legislature of that year adjourned on the ninth day of May, and hence said act, by virtue of the provision of the constitution reserving to the people the initiative and referendum powers, did not go into effect until ninety days after the date of the adjournment of said session of the legislature, or until the ninth day of August, 1915. (Stats. 1915, pp. 1655, 1656.)

While the provision as to the compensation to be paid to justices from the date upon which the act became effective until and for the remainder of the year 1915 is not involved in this controversy, since, so it is conceded by counsel, the justices of Placer County were paid and received the compensation so provided for, it is well to call special attention to that provision, inasmuch as it bears to some extent upon the question of the intention of the legislature as to the time at which the whole provision as to the compensation of such justices should have operative or practical effect.

The ground upon which the respondent refuses to draw his warrant in favor of the petitioner for the salary claimed by the latter by virtue of the amended County Government Act of 1915, is that the office of justice of the peace is a county office, and that the compensation provided for the incumbent of such office by the said act is, as to the terms of justices of the peace of counties of the thirty-first class existing at the time of the amendment prescribing such compensation, amounts to an increase of the compensation of a county officer after his election and during his term of office, contrary to the terms of article XI, section 9, of the constitution. The precise language of said section of the constitution is:

"The compensation of any county, city, town, or municipal officer shall not be increased after his election or during his

term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed."

The contention of the petitioner is: 1. That he is neither a county nor city or town or municipal officer, but that the office of justice of the peace is an integral part of the judicial system of the state, as established and contemplated by the constitution (art. VI, sec. 11), and that since article XI, section 9, of that instrument, above quoted, or any other section or provision of that instrument, does not expressly include justices of the peace within the scope of its inhibitions, it follows that the legislature is under no legal or constitutional interdiction so far as the increasing the compensation of justices of the peace is concerned. 2. That, conceding that justices of the peace are county officers, the provision for compensation of such officers where, as here, no compensation whatever had theretofore been provided for as to such officers, does not involve the increase of their compensation within the meaning of the section of the constitution above quoted herein.

We have reached the conclusion that the provision made by the legislature of 1915 for the compensation of justices of counties of the thirty-first class (the legislature having omitted previously to make such provision) does not involve an increase in the compensation of those officers within the contemplation of the constitutional inhibition against such increase. It will hence be unnecessary in this proceeding to consider the question whether justices of the peace are county officers and the matter of their compensation subject to the terms of the above section of the organic law.

It should be explained, however, that counsel appearing here as *amici curiae* represent the county of Lassen, which is of the fifty-second class, as counties have been classified by the legislature. By the brief of counsel so appearing here, it is disclosed that one Arnold had been elected a justice of the peace of township No. 1 of Lassen County at the general state election held in the month of November, 1914, and entered upon the discharge of his duties of said office on the first Monday in January, 1915. At the time of his election, his salary as such justice, as fixed by the legislature of 1913, was fifty dollars per month. (Stats. 1913, p. 1226.) The legislature of 1915, however, increased his compensation from fifty

dollars per month to one hundred dollars per month. (Stats. 1915, pp. 1379, 1380.)

Arnold, it is likewise made to appear, petitioned the superior court of Lassen County for a writ of mandate to compel the auditor of said county to draw a warrant in his (Arnold's) favor for the sum of one hundred dollars as for his salary for the month of August, 1915, his claim being that he was entitled to be paid for his services as justice according to the compensation prescribed for his office by the legislature of 1915. The learned court below held against his contention and denied the writ, the ground of the decision being that a justice of the peace is a county officer and, therefore, comes within the terms of article XI, section 9, of the constitution forbidding any act by the legislature increasing the compensation of county officers during the terms for which they had been elected.

Arnold has not initiated any proceeding authorizing a decision in his case by this court. As above stated, however, his attorney and the attorneys representing Lassen County, no doubt conceiving that the question upon the solution of which Arnold's case hinges, would arise and be considered and disposed of in the present proceeding, appeared herein to present the pivotal point involved in that case; but, as before declared, we find it unnecessary, in the determination of the issue presented by this proceeding, to consider and decide that point. And, since it is deemed to be unnecessary to do so, we prefer not to consider and decide in this proceeding the question whether a justice of the peace is a county officer within the meaning of article XI, section 9, of the constitution. The question has incidentally arisen in a number of cases decided by the supreme court, but that court has thus far not found it necessary to express an unqualified or a definitive judgment thereon.

The sole question, then, with which we are here concerned is, as before suggested, whether the act of providing compensation for justices of the peace in cases where the legislature had theretofore made no provision whatever for such compensation is tantamount to "increasing" the compensation of those officers, in violation of the constitutional restriction upon the legislature in that particular, assuming, of course, for the purposes of this decision, that justices of the peace are county officers.

That the legislature intended that the compensation pro-
vided for for the justices of the peace of counties of the
thirty-first class by the amendment made at its session of 1915
to so much of the County Government Act as applies to coun-
ties of that class should be received by such justices in office
at the time of the enactment of said amendment, is a propo-
sition about which there can be no kind of doubt. If the
amendment were otherwise obscure or uncertain in that re-
gard, it is certainly made very clear by the special provision
authorizing the payment of the compensation so prescribed
to such justices immediately upon the law going into effect—
that is, beginning with the ninth day of August, 1915, and
for the remainder and until the expiration of that year. Of
course, the legislative intent as to an act would become wholly
without importance or significance if it should transpire that,
by giving effect to such intent, the act would contravene some
constitutional inhibition with regard to the subject matter
thereof. For illustration (concretely): In the case of the law
under consideration, although the legislature has evinced a
clear intention that the law should have operative force the
moment that it went into effect, still, if, by carrying out that
intention, the justices of the peace affected thereby (assuming,
for the purposes of the proposition, that they fall within the
inhibition of section 9 of article XI of the constitution) would
be allowed compensation in excess of the amount which they
were allowed by law when the amendment was enacted, the
intention of the legislature that said law should become oper-
ative or given practical operation immediately upon its going
into effect would be violative of the constitutional mandate
referred to and could not be sustained. But the provision in
the amendment of the County Government Act for the pay-
ment of compensation to justices of the peace in Placer, and
other counties of the thirty-first class, from the time the
amendment was to go into effect, is significant in that it
clearly, and, indeed, unquestionably, discloses that the con-
trolling motive underlying the amendment as a whole was to
rectify the effect of an oversight by the legislature of 1913
(the first session of that body after the adoption of section 15
of article VI of the constitution, whereby judicial officers are
prohibited from receiving to their own use any fees or per-
quisites of office, which had theretofore constituted the only
source as well as mode of compensation to those officers) to

make any provision for the compensation of those judicial offi-
cers of counties of the thirty-first class, with the obvious re-
sult that such officers were required, from the time of the
operative effect upon them of said constitutional amendment,
to render services as such officers without compensation or
remuneration of any kind or character whatsoever. This
having been, obviously, the sole legislative design in amend-
ing the County Government Act in 1915, in so far as that act
applies to justices of the peace of counties of the thirty-first
class, is it true that, in so attempting to correct so serious an
inadvertence, the legislature ran up against the constitutional
mandate against the *increasing* of the compensation of cer-
tain officers after their election or during their terms of office,
conceding, but not deciding, that justices of the peace come
within the category of officers mentioned by section 9 of article
XI of the constitution? As above declared, we do not think so.

The object which the framers of the constitution of 1879
had in view, in incorporating into that instrument the said
provision, has often been explained in the cases and is well
and generally understood. In the constitution of 1849, which
was superseded by our present organic law, there was no such
restriction upon the legislature. The result was that under
that instrument persons elected to county, town, and munici-
pal offices were constantly appealing to the legislature to in-
crease the compensation of the offices to which they had been
elected during the terms for which they had been elected.
The practice grew to be a most pernicious one. In almost all
instances the legislative judgment with respect to such legis-
lation was largely controlled, not by a consideration of
whether the proposed increase of compensation was just to
the taxpayers as well as to the office-holders, but by the per-
sonal influence and persistent importunity of the latter and
their friends. The effect of this system was, as most natur-
ally it would be, that certain officers of certain counties were
awarded a larger amount of compensation for their services
as such than was allowed to the officers of other counties per-
forming like services both in character and extent. It was
to impart some semblance of uniformity to the compensation
allowed to county and other local officers, and to that end
eliminate, in the consideration of legislation looking to an in-
crease in such compensation, the element of "personal equa-
tion," which, as stated, was responsible for much of such legis-

lation under the old system, that the constitutional barricade against such legislation was adopted into the present organic law of California.

The constitutional provision in question is founded in good sense and justice, but it cannot justly be so construed as to prevent the legislature from supplying a manifest ellipsis in the law—to correct an obvious inadvertence whose result, if permitted to remain uncorrected, must be to hamper in no inconsiderable degree the proper administration of public affairs under a system established by the people themselves through their constitution. There is nothing in the constitution implying that persons performing public services shall not be compensated and adequately compensated therefor. On the contrary, that instrument contemplates that all public servants shall be justly compensated for their public services. The very provision in question so implies, as reasonably may it even be said of the provision which forbids the payment of judicial officers for their services as such in the form of fees required by the law to be paid to them for certain official acts. The constitution has, save in an exceptional instance or two, committed to the legislature the duty of making provision for such compensation, and where that body fails wholly to do its duty in that regard, it must be assumed that the omission has been due entirely to an oversight or inadvertence. To hold it to be true, then, that in such a case an act whose purpose is merely to correct the inadvertence and so provide for compensation—provide for something which theretofore had not existed—amounts to an "increase" of compensation within the import of the constitutional provision in question, would be to give to that provision a most unreasonable construction or a construction from which most unjust consequences would follow, where the legislature had failed to do its duty in that regard. But the provision referred to cannot in reason be given such a construction. Indeed, such a construction would amount to a palpable solecism in logic. It would give to the word "increase" a signification opposed to what it naturally implies, for the act of "increasing" anything necessarily presupposes the existence in some measure, or to some extent, of something which may be enlarged. In other words, to effect an increase is to add something to or enlarge something already in existence; or, as Webster's Dictionary defines the word "increase," it is

"that which is added to the original stock by augmentation or growth—to extend or enlarge in size, extent, quantity, number, intensity, value, substance," etc. It would be no less absurd to attempt to conceive a process by which something may be added to nothing than it would be to attempt to conceive the subtraction of something from nothing. If a person owning no money or other kind of property suddenly becomes the owner of property or money, his wealth has not thereby been "increased" within the lexicology or signification of that word. He has simply acquired something which previously he did not have.

The foregoing view of the constitutional provision under consideration coincides with that expressed in characteristically clear and forceful language in a dissenting opinion by the late learned Justice McFarland in the case of *Harrison* v. *Colgan,* 148 Cal. 69, 78, [82 Pac. 674], in which a similar constitutional provision, applicable, however, to the justices of the supreme and appellate courts, was considered. Among other things, he said: " . . . As to the salaries of the judges of the new superior courts, its provision is that 'until otherwise changed by the legislature the superior court judges shall receive an annual salary of three thousand dollars each.' But the provision as to salaries of justices of the supreme court is materially different. It is that 'during the term of the first judges elected under this constitution the annual salaries of the justices of the supreme court shall continue until otherwise provided by the legislature.' It does not provide at all for salaries of justices who shall be elected after the first term. It leaves that for the legislature, whose duty it was to provide for the salaries of said future justices. The legislature, however, neglected that duty until March 18, 1905. And when, at the last named date, the legislature did perform that duty by fixing the salary at eight thousand dollars, the salary was not thereby 'increased.' It simply for the first time fixed the salary, not by increasing an existing salary, for there was none, but by remedying the former neglect to fix any salary at all. The fact that from the time when the provision of the constitution as to the salaries of the first justices ceased, the state, without any law on the subject, paid the justices certain compensation, does not in any way affect the validity of the above views."

While the court, in the main opinion, did not accept the reasoning of Justice McFarland, there is nothing said in the majority opinion in that case which conflicts with the view expressed by the dissenting justice as to the point here under consideration.

We conclude that the petitioner is entitled to the compensation prescribed for his office by the law of 1915, and the demurrer to the petition herein is overruled and, accordingly, a writ of mandate will issue out of this court requiring the respondent to draw his warrant in favor of the petitioner for the salary of said petitioner, as prayed for herein.

Chipman, P. J., and Ellison, J., *pro tem.*, concurred.