In the Matter of the Application of PETER F. DIEDRICH and Others, Respondents, for a Peremptory Mandamus Order against CHRIST S. WARREN, as Mayor of the City of Tonawanda, Appellant, Directing Him to Sign and Deliver Salary Warrants in Favor of the Petitioners for Salaries for the Months of April and May, 1924, and Like Warrants Which May Be Drawn Hereafter.

Fourth Department, May 6, 1925.

Municipal corporations — salaries of municipal officers — right of common council of city of Tonawanda to increase salaries of its members during terms of office — salaries were fixed originally by charter — Laws of 1920, chap. 350, amending Tonawanda City Charter (Laws of 1905, chap. 357, tit. 6, § 3), provided that common council should have power to fix and change salaries of all officers of city but not to diminish during term of office — increase by common council of salaries of its members is legal.

An ordinance passed by the common council of the city of Tonawanda increasing the salaries of the members thereof during their term of office is legal and the members of the common council are entitled to receive the increased salaries, since it appears that while originally the salaries were fixed by charter, chapter 350 of the Laws of 1920, amending the Tonawanda City Charter (Laws of 1905, chap. 357, tit. 6, § 3), provided that the common council should have power to fix and change the salaries of all officers of the city, including such as were

---

* See 1 Comp. Laws Mich. 1897, § 3846; now 1 Comp. Laws Mich. 1915, § 4017.— [REP.

fixed by charter, but not to diminish the salaries during the continuance of the term of office; the amendment clearly gave the common council the power to increase the salaries of its members.

HUBBS, P. J., dissents, with opinion.

APPEAL by Christ S. Warren, as mayor of the city of Tonawanda, from a peremptory mandamus order granted at the Erie Special Term of the Supreme Court and entered in the office of the clerk of the county of Erie on the 31st day of July, 1924, directing him to sign certain city warrants in favor of the petitioners.

*Love & Keating* [*S. H. Milliner* of counsel], for the appellant.

*Philip A. Laing,* for the respondents.

DAVIS, J.:

In March and April, 1924, the common council of the city of Tonawanda adopted an ordinance making a general increase of the salaries of the municipal officers, including their own as aldermen. The mayor regarded the increased salaries illegal and refused to sign vouchers for such increased pay. This proceeding was instituted and a peremptory mandamus order directing him to sign such vouchers was granted. I think it may be said that in form, at least the increase was legally adopted; and that the only question seriously presented and requiring consideration is the validity of the increased salaries of the aldermen.

In section 6 of title 2 of chapter 357 of the Laws of 1905, known as the Tonawanda City Charter, as amended by chapter 410 (erroneously numbered 401) of the Laws of 1906, the elective officers of the city were enumerated and included six aldermen. It was provided therein that the mayor, president of the common council and aldermen should serve without compensation. Chapter 793 of the Laws of 1917 amended these statutes. The amendment maintained the same enumeration of officers and fixed the salary of the mayor at $500 a year; that of the president of the common council at $300; and that of each of the aldermen at $250. By chapter 355 of the Laws of 1919 the term of the president of the common council was changed to two years but his annual salary remained the same. The maximum salaries of certain other elective officers were increased, the amount of which was to be fixed by the common council:

By chapter 350 of the Laws of 1920 the charter section aforesaid was further amended and the elective officers whose salaries under the amendment of 1919 were to be fixed by the common council were given a fixed salary; and section 3 of title 6 of the charter as amended by the act of 1920 provided that the common council " shall have the power to fix and change the salaries of all officers

of the city, including such as are fixed by this act, which shall not be diminished during the continuance of such term of office."

The claim of the appellant is that the statute confers no right or power on the aldermen to increase their own salaries during the term of office for which they have been elected, and that their act in making such increase is against public policy.

The question is not one of ethics and good taste but of interpretation of the language of the statute of 1920 in the light of public policy.

As a general proposition it is true that an act which makes a man " the judge of his own case " is contrary to public policy, and " the claim of unlimited right to ordain themselves compensation is undoubtedly an unreasonable one." (See *Kendall* v. *Stafford,* 178 N. C. 461; 101 S. E. 15; *State of Iowa* v. *Shea,* 106 Iowa, 735; *State ex rel. Gregory* v. *Jersey City,* 34 N. J. Law, 429; *McFarland* v. *Gordon,* 70 Vt. 455.)

The election or appointment to public office and the discharge of such duties as pertain to the office, do not of themselves imply a right to compensation unless such compensation is fixed by competent authority. (*Gibson* v. *Roach,* 2 App. Div. 86; *Wittmer* v. *City of New York,* 50 id. 482, 486; *Crofut* v. *Brandt,* 58 N. Y. 106; *State ex rel. Gregory* v. *Jersey City, supra; McFarland* v. *Gordon, supra.*) The rules of law relative to contracts do not apply to the official relation; but where a person devotes time and skill to public work in official position, the right to compensation is generally recognized and provision by law made therefor.

Generally speaking, the salaries of public officers are fixed in four ways: (1) By the Constitution; (2) by the Legislature; (3) by the municipal legislative body through power delegated by the Legislature; (4) where by statute the " town meeting " principle is operative, by direct vote of the electors. (See *McFarland* v. *Gordon, supra.*)

The public policy of a State in matters of this nature is what the Legislature says it shall be. (*Messersmith* v. *American Fidelity Co.,* 232 N. Y. 161.)

Public policy changes as the habits, opinions and wants of a people vary at different times and in different localities. (13 C. J. 427.) Recently two principles which may be applicable here seem to have gained some public recognition: (1) That it is bad economy to pay such inadequate salaries that competent men of character will not accept or long occupy public office. This is illustrated by many increases in pay granted public officials by State and municipal legislative bodies. (2) That municipalities shall be given greater freedom of government and regulation of

their own local affairs without the check and restriction heretofore exercised by the Legislature. This has been manifested by the constitutional amendments and the statute providing for home rule of cities. (See State Const. art. 12, §§ 2, 3, 4, 5, 7, adopted Nov. 6, 1923; Laws of 1924, chap. 363, known as the City Home Rule Law, being Consol. Laws, chap. 76.)

The cases which hold that officials may not increase their own salaries (heretofore cited) rest for their authority on the fact that no clear power was given in the statute. In none is it denied that it was within the legislative power to delegate such authority to the municipal body. In the opinion of VAN SYCKEL, J., in *State ex rel. Gregory* v. *Jersey City* (*supra*) it is said: " The ordinance is illegal unless it rests upon the sanction of positive enactment. That the Legislature might clothe the board of aldermen with such power as they claim to have exercised is not questioned, but the actual delegation of the power is denied."

In the instant case, as I have pointed out, the Legislature made a change in 1917 from no compensation to compensation at the rate of $250 a year. There was no provision that it was to be paid at the beginning of a new term, and evidently provided salaries for men then in office who had been elected to serve without compensation. This court has held under similar circumstances that an act attaching a salary to the office of alderman which took effect immediately, is not void as to an alderman elected at a time when no salary was attached to the office, and who served out his term. (*Young* v. *City of Rochester*, 73 App. Div. 81.)

The Legislature might have made the same increase as the common council has made, and the act would have been legal. Compensation of officers may be increased or diminished during the term in the absence of constitutional inhibition, for the right to such compensation accrues from services performed and not from the nature or tenure of the office. (*Matter of Mayor*, 33 App. Div. 365; affd., 158 N. Y. 668; *Conner* v. *City of New York*, 5 id. 285.) (See, also, 29 Cyc. 1427, and cases cited in many jurisdictions.)

The language of the charter, as amended in 1920, seems reasonably clear. It is provided that the common council " shall have the power to fix and change the salaries of all officers of the city, including such as are fixed by this act, which shall not be diminished during the continuance of such term of office." The aldermen are among the officers enumerated in the charter. The power is to " fix and change " but not to " diminish " salaries during the term. The words seem apt and sufficiently definite to convey a grant of power. The other provisions in the charter (Tit. 16, §§ 2, 3; tit. 26, § 3) forbidding the common council to be concerned or interested in any

way in claims against the city or in auditing any such account, are not applicable. Those provisions relate to claims of an entirely different character. Otherwise, the aldermen would be forbidden to audit or accept any salary. I think the legal right to increase their own salaries is established.

The act of the mayor in raising the legal question and bringing it before the court was a proper conception of his duty; and, therefore, as a matter of discretion, costs should not be allowed against him.

The order should be affirmed, without costs.

CLARK, CROUCH and TAYLOR, JJ., concur; HUBBS, P. J., dissents in an opinion.

HUBBS, P. J. (dissenting):

It is undoubtedly true that the Legislature had the power to authorize the members of the common council of the city of Tonawanda to increase their own salaries during the term for which they were elected. It is also true that public policy should prevent the exercise of such power. It would be a most unusual and extraordinary act of the Legislature that would justify the legislative body of a municipality in increasing the salaries of its own members during their terms of office. Such an act would enable the servant to fix his own salary and to act as judge in his own case. The statute in question (Laws of 1920, chap. 350, amdg. Tonawanda City Charter [Laws of 1905, chap. 357], tit. 6, § 3) should be construed in the light of ancient principles of the common law, which in no uncertain way forbid such action.

In order to hold that an act of the Legislature grants such extraordinary power, it must appear that such was the clear intent of the Legislature, and the language of the statute must be so clear that there can be no doubt of the legislative intent. I do not think that the statute in question was intended to grant such power. While it does grant power to the common council " to fix and change the salaries of all officers of the city," it does not expressly grant power to increase the salaries of members of the common council during their terms of office. The general language used should not be held to authorize such change. (*People ex rel. Edwards* v. *Potter,* 36 Hun, 181; *McFarland* v. *Gordon,* 70 Vt. 455; *State of Iowa* v. *Shea,* 106 Iowa, 735; *Kendall* v. *Stafford,* 178 N. C. 461; 101 S. E. 15; *State ex rel. Gregory* v. *Jersey City,* 34 N. J. L. 429.)

In *Washington Insurance Company* v. *Price* (1 Hopk. Ch. 1) the chancellor said: " In England it has always been held, that however comprehensive may be the terms by which jurisdiction is conferred upon a judge, the power to decide his own cause is always a tacit

exception to the authority of his office. Finch's Law, 19; 4th Coke's Reports, 118; Wingate's Maxims, 170. Such, I conceive, is also the law of this State."

While the authority granted in general language by the Tonawanda City Charter is broad and comprehensive, still I think the power of the members of the common council to increase their own salaries is a " tacit exception " to the authority granted.

The order, in so far as it directs the mayor to sign the city warrants in favor of the members of the common council should be reversed, and in all other respects affirmed, without costs.

Order affirmed, without costs.