In the Matter of the Application of HARRY J. BAREHAM, Respondent, for a Peremptory Mandamus Order against THE BOARD OF SUPERVISORS OF THE COUNTY OF MONROE, Appellant.

Fourth Department, May 6, 1936.

*Harry Rosenberg, Monroe County Legal Adviser*, for the appellant.

*Carlton F. Bown* and *Carolyn Bareham*, for the respondent.

EDGCOMB, J. At the 1929 general election the petitioner, Harry J. Bareham, was elected treasurer of Monroe county for a term of three years, commencing on the first Tuesday of October, 1930, and ending on the first Tuesday of the same month in 1933. Prior to taking office the board of supervisors fixed his salary at $7,500 per annum.

On March 28, 1931, chapter 171 of the laws of that year became a law with the approval of the Governor. The act, which amended the statute relating to the collection of taxes in Monroe county, reads as follows:

" § 24. The charges to be added to the tax and interest upon each parcel of land to be sold or advertized for sale by virtue of the provisions of this act shall be fixed by the board of supervisors of Monroe county, at their first session after the passage of this act. Before being so determined by said board of supervisors, said charges shall be as follows: For each parcel sold, the sum of two dollars, of which seventy-five cents shall be received by the county treasurer as his compensation, and the balance shall be paid into the county treasury; and for each parcel redeemed before the same is sold, the sum of one dollar and fifty cents, of which fifty cents shall be received by said treasurer, and the balance paid into said treasury."

Claiming that he was entitled to receive the fees specified in the above quoted statute for the services therein mentioned which he performed from and after March 28, 1931, the date when the law became effective, petitioner sought and obtained a peremptory mandamus order requiring the board of supervisors of Monroe county to audit his claim for the amount of such fees. We are required to pass upon the propriety of such order.

Subject only to constitutional restrictions, the Legislature has the legal right to modify the salary of a public official during his term of office, or to change the mode of his compensation. Within such limits, the right to an office carries with it the emoluments thereof. (*Nichols* v. *MacLean,* 101 N. Y. 526, 533; *Morrall* v. *County of Monroe,* 271 id. 48.)

It was conceded upon the argument that the fees called for by the statute, including those which go to the county treasurer, have been collected, and are in the hands of the county. Notwithstanding that fact, the board of supervisors resists the granting of this mandamus order upon two general grounds: (1) That the statute by its terms does not apply to the then incumbent in office, but only to his successors; (2) that a contrary holding would render the act violative of the State Constitution.

The Legislature must be presumed to have known that the petitioner was in office at the time the law was passed and took effect, and that his term would not expire for two years thereafter. There is not the slightest token or indication that the law-making body intended to exempt the then incumbent in office from the benefits conferred by this amendment. Clearly it applies to the petitioner.

True, the County Law provides that the board of supervisors shall have power to fix the amount of salary or remuneration of any county officer or employee, and that the recompense of any officer elected for a definite term shall not be increased or diminished during such term. (County Law, § 12, subd. 5.) But there is no constitutional inhibition preventing the Legislature from increasing the compensation of county officers during their term of office, and, in the absence of such prohibition, such legislation would be legal. (*Matter of Diedrich* v. *Warren*, 213 App. Div. 406, 409; affd., 241 N. Y. 609; *Matter of Mayor*, 33 App. Div. 365, 366; affd., 158 N. Y. 668.) Then, too, the Legislature can always amend its previous enactments, and the statute in question, having been passed after the County Law was enacted, must be construed to alter and change the latter in all respects wherein the two are in conflict.

This brings us to the main contention of the appellant, viz., that the act under which the petitioner asserts his rights to these fees is unconstitutional, because it is violative of section 18 of article 3 of the State Constitution as well as section 28 of the same article.

We are not unmindful of these and other mandatory provisions of the fundamental law of the State, and of the duty of the courts to uphold the will of the people as expressed in that document. The evil designed to be guarded against must never be lost sight of. We must not forget, however, that when, under our form of government, the three separate and distinct departments were created, the Constitution, by necessary implication, prescribed those limitations, and imposed those duties which were essential to the independence of each. Power to legislate is vested in the Legislature,

and not in the courts. If ill-advised statutes are enacted, the Legislature, and not the courts, is responsible to the people. We have no right to pass upon the wisdom, expediency or necessity of the particular statute under review. We had nothing to do with its enactment, and, except as individuals forming a part of the great body politic, we have nothing to say as to the fitness or propriety of the legislation. That responsibility rests entirely upon the Legislature which passed the statute, and the Governor who gave it his approval. We are given no revisionary powers of legislation. So long as a statute does not infringe any provision of the Constitution, our hands are tied, no matter how sympathetic we may be with the criticisms aimed at the act. The court must always be careful not to blur the line of demarcation between the legislative and judicial functions of the government.

Every legislative act is presumed to be constitutional. If a reasonable doubt exists, that uncertainty must be resolved in favor of the legality of the statute. (*Ogden* v. *Saunders*, 12 Wheat. 213, 270; *Whitney* v. *California*, 274 U. S. 357, 371; *People ex rel. Cotte* v. *Gilbert*, 226 N. Y. 103, 106; *People ex rel. Carter* v. *Rice*, 135 id. 473, 484; *People* v. *Budd*, 117 id. 1, 29; *City of Buffalo* v. *Hawks*, 226 App. Div. 480, 485; affd., 251 N. Y. 588; *Kerrigan* v. *Force*, 68 id. 381; *Gardner* v. *Ginther*, 232 App. Div. 296, 298; affd., 257 N. Y. 578.)

With this well-established rule in mind, we fail to see how it can be said that the act in question is unconstitutional.

Section 18 of article 3 of the State Constitution provides as follows:

" The Legislature shall not pass a private or local bill in any of the following cases:   *   *   *

" Creating, increasing or decreasing fees, percentages or allowances of public officers, during the term for which said officers are elected or appointed."

The appellant urges that the act in question is a local bill, as it applies to Monroe county only, and that it increases the fees of the petitioner during the term for which he was elected, and is, therefore, repugnant to the above-quoted provision of the Constitution.

Section 23 of article 3 provides that section 18 shall not apply to any bill, or to any amendment to any bill, which shall be reported to the Legislature by Commissioners who have been appointed pursuant to law to revise the statutes. The two sections must be read together, and the question whether the act here under review violates section 18 depends upon whether the bill was reported to the Legislature by Commissioners appointed by law

to revise the statutes. The presumption is that it was so reported, and as the record contains no allegation that it was not, we are not entitled to indulge in any such assumption, and cannot, therefore, hold the statute void upon that theory. (*People* v. *Ebelt*, 180 N. Y. 470, 475, 476; *People* v. *Petrea*, 92 id. 128, 137, 138; *Stetler* v. *McFarlane*, 230 id. 400, 411.)

This provision of the Constitution has been construed to cover an amendment to an act which had already been passed, and which had been in force for sometime, by which decision we are bound. (*Stetler* v. *McFarlane*, 230 N. Y. 400.)

Neither do we think it can be said that the statute in question is opposed to section 28 of article 3 of the State Constitution, as is claimed by the appellant. That section reads as follows: " Extra compensation prohibited. The Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor."

" The evil sought to be remedied by this constitutional provision seems to be an increase of compensation for services theretofore rendered, which would be in the nature of a gratuity." (SMITH, P. J., in *Porter* v. *Fletcher*, 153 App. Div. 470, 472.)

" Extra compensation is compensation over and above that fixed by contract or by law when the services were rendered." (CULLEN, J., in *Matter of Mahon* v. *Board of Education*, 171 N. Y. 263, 266, 267.)

The same rule is laid down in the following cases: *Young* v. *City of Rochester* (73 App. Div. 81); *Truesdale* v. *City of Rochester* (33 Hun, 574); *Matter of Diedrich* v. *Warren* (213 App. Div. 406; affd., 241 N. Y. 609); *McGovern* v. *Mitchell* (78 Conn. 536; 63 A. 433).

By the adoption of this constitutional provision it was sought to prohibit any law-making body, whether it was the Legislature of the State, county or city, from freely giving away the peoples' money for services which had previously been performed, for which disbursement the people would receive no return whatsoever. The mischief sought to be eradicated was the granting of gratuities, something given voluntarily for nothing. Compensation for services to be performed in the future is not a gratuity.

The statute does not act retrospectively, and petitioner does not seek to recover any fees for advertising and selling property prior to March 28, 1931. Clearly that would be within the ban of the Constitution. He asks only to be compensated for work performed after the enactment of the statute. True, he was required prior to March 28, 1931, to make a list of the properties upon which

the taxes were unpaid, and cause the same to be published in the proper newspapers, and, on the day specified in the notice and the succeeding days, to sell each parcel, or so much as would be sufficient to pay the tax assessed against the same. (Laws of 1884, chap. 107.) By accepting the office he bound himself, so long as he chose to continue in his position, to perform all the duties imposed upon him by law. Nevertheless, the Legislature had the power, if they thought proper, to award him fees for future services in this particular.

In *Young* v. *City of Rochester* (73 App. Div. 81) this court unanimously upheld an act giving to the aldermen of the city of Rochester a salary for the remainder of their elective term, where, under the statute in force when they were elected and took office, they were entitled to no compensation. It was held that, so far as remuneration for future services was concerned — those performed after the statute went into effect — the act did not violate the Constitution.

In *Truesdale* v. *City of Rochester* (33 Hun, 574) the late General Term of the Fifth Department had under review an ordinance of the common council of the city of Rochester raising the salary of the police justice from $2,250 to $2,500 per year. It was held that the increase of the salary for the remainder of that official's term did not run counter to the provisions of the Constitution forbidding the council from granting extra compensation to any public officer.

This court held in *Matter of Diedrich* v. *Warren* (213 App. Div. 406; affd., 241 N. Y. 609) that an ordinance passed by the common council of the city of Tonawanda increasing the salaries of the members of that board during their term of office was legal.

The Constitution of the State of Connecticut contains a clause quite similar to section 28, article 3, of our own Constitution. It provides that " Neither the General Assembly nor any County, City, Borough, Town, or School District, shall have power to pay or grant any extra compensation to any public officer, employee, agent, or servant, or increase the compensation of any public officer or employee, to take effect during the continuance in office of any person whose salary might be increased thereby." The Supreme Court of Errors of that State held in *McGovern* v. *Mitchell* (78 Conn. 536; 63 A. 433) that the power to grant extra compensation, which the Constitution withdrew from the bodies named, continued unimpaired, except as to acts forbidden by the fundamental law of the State, and that a general law which established a compensation for public officers for the future, larger than that which had been fixed by previous legislation, was not repugnant to the

Constitution, although it took effect during the term for which they were appointed.

In the light of these various judicial holdings, we would not be justified in overriding the judgment of the legislative and executive branches of the government, and holding this statute unconstitutional.

In view of the conclusion which we have already reached, it becomes unnecessary to discuss the point raised by the petitioner that the county is estopped from questioning the constitutionality of the act by reason of the fact that it has acted under the statute, and collected the fees therein provided for.

For the reasons stated, we think that the order appealed from must be affirmed.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Order affirmed, with costs.