IVAN CANNON, DARYL B. GARNER, AND FORREST
PURDY, APPELLANTS, *v.* WILLIAM L. TAYLOR,
C. R. CLELAND, AND JOHN MYERS, RESPONDENTS.

No. 6367

June 22, 1971                              486 P.2d 493

[See opinion on Rehearing filed February 23, 1972]

*L. Earl Hawley* and *Edward G. Marshall,* of Las Vegas, for
Appellants.

*Carl E. Lovell, Jr.,* City Attorney of North Las Vegas, for
Respondents.

## OPINION

By the Court, ZENOFF, C. J.:

This appeal involves a dispute over salary levels which North Las Vegas officials established for themselves in April 1967. The officials in question, Mayor Taylor and Councilmen Cleland and Meyers, were elected to terms which were to run from May 11, 1965 to May 14, 1969. At the time of their election the compensation was set by the North Las Vegas Charter, Ch. 283 Statutes of Nevada 1953, as amended by Ch. 447 Statutes of Nevada 1963. The mayor's salary was established as $5,400 per year and the councilmen's salary as $3,600 per year. On April 15, 1967 the legislature amended these statutes so as to allow the salary levels to be determined by the city council.[1]

Subsequently, on April 29, 1967 the North Las Vegas city council met and established salary levels of $750 per month ($9,000 per year) for the mayor and $500 per month ($6,000 per year) for the councilmen. These salaries were made effective retroactively from April 15, 1967.

This class action suit was instituted by the appellants, as taxpayers, on the day before the expiration of the respondents' term of office. The relief sought was repayment to the city of all sums paid these three officials in excess of the salary as it existed before the April 15, 1967 amendment of Ch. 283 Statutes of Nevada 1953. The basis for the relief sought was that the action of the council in establishing the new salary

---

[1]Ch. 400 Statutes of Nevada 1967:

Sec. 2.  . . . .

The compensation of the mayor, councilmen and judge of the municipal court shall:

1. Be fixed by the city council; and

2. Not be diminished or increased as to any such officer during the term for which he has been elected or appointed.

Sec. 3.   This act shall become effective upon passage and approval.

levels effectively amounted to the council members granting themselves a raise while in office. As such, appellants urged, this action was contrary to the mandate of the legislature.

The appellants and respondents agreed that there were no disputed fact issues to be tried and both moved for summary judgment. The lower court granted the officials' motion and denied that of the taxpayer-plaintiffs. The court thus in effect sustained the capacity of the officials to establish their own compensation at levels of their own choosing. This appeal follows.

1. Respondents argue that Ch. 400 Statutes of Nevada 1967 unambiguously vested in the North Las Vegas city council the blank-check power to establish its own and the mayor's compensation, effective upon passage of its own action. This assertion is based upon the fact that Ch. 400 states: "The compensation *shall*: (1) Be fixed by the city council . . ." and "Sec. 3. This act shall become effective upon passage and approval." (Emphasis added.) Respondents interpret the quoted portion as indicating that the former compensation authorization was repealed and mandating that if any compensation is to be paid thenceforth, it shall be by city council authorization.

We cannot agree that this statute unambiguously gives the power argued for. While on the one hand it says that the council shall fix the compensation, on the other hand the statute says the council may not increase an official's compensation during the term for which he has been elected. Thus, it seems to give immediate power to set any compensation level yet it also evidences the desire to prevent in-term raises.

Respondents' position rests upon the assumption that in amending the previous compensation scheme out of the charter the legislature thus repealed any authorization of compensation (*cf.* City of Reno v. Stoddard, 40 Nev. 537, 167 P. 317 (1917)), so that as of April 15, 1967 no compensation was payable to these officials. No compensation being authorized, respondents urge, there was no compensation to "increase," so the proscription of Ch. 400 was not violated.

We need only note in considering this argument that there is considerable respectable authority for the proposition that the fixing of a salary where there was formerly none is, indeed, a proscribed "increase." C. Rhyne, *Municipal Law,* § 8–21 (1957); Gay v. City of Glendale, 16 P.2d 971 (Ariz. 1932); Murphy v. Page, 136 N.E. 70 (Mass. 1922); State v. Ritzville, 132, P.2d 737 (Wash. 1942). See also Annot., 144 A.L.R. 685 (1943). *Contra,* 4 E. McQuillin, The Law of Municipal

Corporations, § 12.198 (1968); Gwynn v. McKinley, 158 P. 1059, 1063 (Cal.App. 1916); and State v. M'Dowell, 27 N.W. 433 (Neb. 1886). Since there has not been previous construction of the term "increase" by this court, and since it is not defined by the legislature we cannot know for certain which line of authority the legislature meant to follow. Therefore, this statute must at least be said to be ambiguous with respect to whether, assuming the former compensation scheme was impliedly repealed and no compensation was payable after April 15, 1967, the later fixing of compensation was an "increase."

Another ambiguity arises under the respondents' assumption that because of the April 15, 1967 effective date of this statute no compensation was payable thereafter until fixed by the council. That ambiguity is whether the legislature intended the council to be empowered to establish and pay compensation from April 15, 1967 no matter when it met. The legislature must have foreseen that the council would not meet immediately upon passage and approval of this act, yet it failed to empower the council to make the fixing of its salary retroactive to April 15, 1967. Though in certain situations retroactive payments of compensation may be allowable (City of Las Vegas v. Ackerman, 85 Nev. 493, 457 P.2d 525 (1969)), in others, such as where a body is empowered to establish its own compensation, it has been said such power will be withheld in the absence of a specific grant. Pugnier v. Ramharter, 81 N.W.2d 38 (Wis. 1957).

2. In light of these ambiguities it can only be said that the statute on its face does not clearly spell out the intent of the legislature—if, indeed, the problems described here were even foreseen by this statute's draftsmen. Did the legislature intend that no compensation be paid these officials during the remainder of this term; that the previous compensation continue; or that a new compensation level, of the officials' own choosing, be paid? The statute being ambiguous, we may only construe it in line with what reason and public policy would indicate the legislature intended.

Clearly it would be unreasonable to conclude that the legislature intended that compensation was to cease April 15, 1967 and possibly resume at the beginning of the next term for these offices in 1969.

It would also be unreasonable to conclude that the legislature intended that the council have blank-check authority to establish its own compensation, effective immediately. First, changes in compensation during terms of office are not favored. *Cf.* Nevada Constitution Art. 4 § 28 and Art. 15 § 9; and NRS 266.450. If a statute delegating authority to fix compensation is ambiguous, power to effect in-term changes will be denied. Busch v. Turner, 161 P.2d 456 (Cal. 1945); Regan v. San Mateo County, 97 P.2d 231 (Cal. 1939); see also Riley v. Carter, 25 P.2d 666, 669–671 (Okla. 1933). Second, and more importantly here, "To permit a public officer without restriction to fix his own compensation is to give him an extraordinary power . . . . [B]efore charter provisions are given this effect the intent to do so should be expressed in language the meaning of which is clear and unmistakable." Meeks v. Fink, 89 So. 543, 544 (Fla. 1921). See also 4 E. McQuillin *op cit.* § 12.178 and McFarland v. Gordon, 41 A. 507 (Vt. 1898).

3. It thus seems most likely that the legislature did not intend to give so broad a power as is contended for. Nor, however, did it intend to require these officials to serve without the compensation they had received earlier in their terms and which those serving later terms could receive.

Rather, we construe this statute as merely evidencing the legislature's intent to divest itself of the task of establishing compensation levels for officials succeeding those in question. The delegation of this task is what became effective April 15, 1967. The specification of compensation embodied in the North Las Vegas charter was not intended to be abrogated until the effective date of valid establishments of compensation by the council. Under this statute, such date could be no sooner than the first day of the succeeding terms for these offices.

Any compensation received by the respondents in excess of the compensation schedule established by the city charter as amended in Ch. 447 Statutes of Nevada 1963 was thus improperly paid, and must be repaid to the city.

Reversed, with direction to enter judgment in accordance with this opinion.

MOWBRAY, J., and COMPTON, D. J., concur.

GUNDERSON, J., dissenting:

This court is called to interpret Sections 2 and 3 of Chapter 400, 1967 Statutes of Nevada, approved April 15, 1967, by which our Legislature amended the 1953 Act that incorporated North Las Vegas.[1] If allowed their literal effect, these provisions, as of April 15, 1967: (1) expressly repealed the salary structure theretofore established by the Legislature, by deleting it from the law; (2) mandated the city council (including respondents) to establish a new salary structure; and (3) provided that the compensation so fixed should not be diminished or increased as to any such officer during his term.

Appellants urge us to ignore what appears first in the statute, i.e. the provision for immediate repeal of the existing salary structure: to declare instead that the existing salary structure governed for more than two years after its express repeal. Appellants urge us to limit the power granted by the provision that appears next in the statute, directing the city council to fix the compensation "of the mayor, councilmen and judge of

[1]"Sec. 2. Section 11 of chapter II of the above-entitled act, being chapter 283, Statutes of Nevada 1953, as last amended by chapter 447, Statutes of Nevada 1963, at page 1213, is hereby amended to read as follows:

"Section 11. Mayor, [and] Councilmen [,] *and Judge of Municipal Court,* Salary of.

"[1. Until the election held on the first Tuesday after the first Monday in May 1965, the mayor shall receive for remuneration for his services the sum of $3,000 per year, payable in equal monthly installments. Thereafter, the mayor shall receive for remuneration for his services the sum of $5,400 per year, payable in equal monthly installments.

"2. Until the election held on the first Tuesday after the first Monday in May 1963, the two councilmen who were elected at the election held in May 1959 shall receive remuneration for their services, as such, the sum of $1,800 per year, payable in equal monthly installments. Thereafter they or their successors in office shall receive remuneration for their services, as such, the sum of $3,600 per year, payable in equal monthly installments.

"3. Until the election held on the first Tuesday after the first Monday in May 1965, the two councilmen who were elected at the election held in May 1961 shall receive remuneration for their services, as such, the sum of $1,800 per year, payable in equal monthly installments. Thereafter they or their successors in office shall receive remuneration for their services, as such, the sum of $3,600 per year, payable in equal monthly installments.] *The compensation of the mayor, councilmen and judge of the municipal court shall:*

*"1. Be fixed by the city council; and*

*"2. Not be diminished or increased as to any such officer during the term for which he has been elected or appointed.*

"Sec. 3. This act shall become effective upon passage and approval."

the municipal court": to say instead that the council could lawfully fix enlarged salaries only for their successors in office. Appellants urge us, in sum, to exalt to prime position in the statute that which appears last, i.e. the provision that compensation of city officials is not to be "diminished or increased as to any such officer during the term for which he has been elected or appointed": to denegrate all in Chapter 400 that precedes that provision. In my view, we may not properly do so.

Although the central issue in this appeal is whether Chapter 400 repealed the existing salary structure, the majority opinion does not quote, or discuss, those portions of Chapter 400 that most directly bear on the issue. Only if one disregards the statute's *express* repeal and deletion of the existing salary provisions, is one able to say, as does the majority opinion: "Respondents' position rests upon the *assumption* that in amending the previous compensation scheme out of the charter the legislature thus repealed any authorization of compensation (cf. City of Reno v. Stoddard, 40 Nev. 537, 167 P. 317 (1917)), so that as of April 15, 1967 no compensation was payable to these officials." (Emphasis added.) I submit respondents' position rests not upon an *"assumption,"* but upon a literal reading of the statute.

Furthermore, even if Chapter 400 did not expressly repeal the existing salary structure, City of Reno v. Stoddard, referred to in the majority opinion, would nonetheless support the position attributed to respondents. Citing a plethora of authority, in the *Stoddard* case this court said: "It is, no doubt, a well-settled rule in the construction of statutes, that where a statute provides (as in this case) that a certain former statute 'is hereby amended so as to read as follows,' any provision of such former statute which is not found in the new statute is repealed. There is a negative necessarily implied that such eliminated portion shall no longer be in force." 40 Nev., at 543. The court went on to note that this rule of construction must be applied, "however improvident" the legislation may have been, saying further: "The motives of the legislature are not subject to judicial inquiry. Its will is supreme to that of the judgment of courts as to the wisdom or policy of its legislation." 40 Nev., at 544. From its earliest decisions, this court has recognized the verity of this view. "The rule is cardinal and universal that if the law is plain and unambiguous, there is no room for construction or interpretation." Brown v. Davis, 1 Nev. 409, 413 (1865).

Thus, in State v. McNamara, 3 Nev. 70 (1867), while this

court recognized that the wording of the statute under examination might well have been inadvertent, it adhered to the mandate of the literal words, saying: "So on the other side, it may reasonably be urged that the lawmakers intended precisely what their words import, (this is a primary rule of construction) . . .

"However that may be, we are not at liberty to speculate as regards probabilities, where the language of the law is so clear and unambiguous as in the case before us.

"The Legislature must be intended to mean what they have expressed in plain terms. Whenever they have done so, there remains no room for construction by the Courts. . ." 3 Nev., at 74.

Somehow, the majority opinion finds support in inapplicable Constitutional and statutory provisions, saying: "First, changes in compensation during terms of office are not favored. Cf. Nevada Constitution Art. 4 § 28 and Art. 15 § 9; and NRS 266.450." I submit these provisions support respondents more than they do appellants. *"Inclusio unius est exclusio alterius.* The inclusion of one is the exclusion of another. The certain designation of one person is an absolute exclusion of all others. 11 Coke, 58*b*; Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325." Black's Law Dictionary, 906 (4th ed. 1957). Thus, "the legislature has plenary power to pass an act diminishing the salary of a county officer effective during his term unless inhibited by the constitution." State ex rel. Miller v. Lani, 55 Nev. 123, 125, 27 P.2d 537, 537 (1933).

The majority opinion also asserts: "If a statute delegating authority to fix compensation is ambiguous, power to effect in-term changes will be denied. Busch v. Turner, 161 P.2d 456 (Cal. 1945); Regan v. San Mateo County, 97 P.2d 231 (Cal. 1939); see also Riley v. Carter, 25 P.2d 666, 669–671 (Okla. 1933)." From this reference, one would suppose that in Busch v. Turner the court refused to allow immediate effect to a salary bill, passed during the term of an official who claimed the right to an in-term increase in pay; however, exactly the opposite is true. In the *Busch* case, the Supreme Court of California did give immediate effect to a salary increase for District Attorneys. In so doing, however, the California court made passing reference to earlier cases holding that, where a constitutional prohibition against in-term increases exists, a salary statute will be construed, if its language permits, so as to avoid unconstitutionality. In this reference, apparently, the majority opinion finds support for its position; however, I find other

language of the *Busch* decision to be more informative on the issues before us: "A statute purporting, in general terms, to increase salaries would ordinarily be construed to include incumbents, and but for the constitutional bar it would do so. *When the prohibition of the Constitution ceases to operate, there is no longer any reason to limit the statute, and its literal meaning may be carried out in full.*" 161 P.2d, at 458; emphasis added. I find the other authorities cited in the majority opinion equally unpersuasive with regard to the case before us.

I subscribe to the reasoning of Matter of Diedrich v. Warren, 213 App.Div. 406, 210 N.Y.S. 49 (N.Y.App. 1925), a case markedly similar to the one before us, and concerning a New York statute that provided "the common council shall have the power to fix and change the salaries of all officers of the city, including such as are fixed by this act [including the common council itself] which shall not be diminished during the continuance of such term of office." The council increased their own salaries during their terms; their action was challenged on the grounds that the statute conferred no right or power on the council to increase their own salaries during the term of office for which they had been elected, and that their act in making such increase was against public policy. Determining that the language of the new law was reasonably clear, the court declined to apply its own views of public policy.

"The public policy of a State in matters of this nature is what the Legislature says it shall be." 213 App.Div., at 408.

I see no problem in the fact that our Legislature failed to place an express ceiling on the authority granted to the city council of North Las Vegas. Had the council acted unreasonably, which does not appear to be the case, a different issue would be presented. In such a case, undoubtedly we would determine that their action was beyond the scope of the legislative grant; however, such a consideration provides no warrant for finding the grant of power totally void.

The judgment of the lower court should be affirmed.

BATJER, J., concurs.