George E. McFarland *vs.* John W. Gordon.

January Term, 1898.

Present: Taft, Rowell, Munson, Start and Thompson, JJ.

*Mandamus—Compensation of Aldermen—Judge in One's Own Case—V. S.*
*19—Acts 1896, No. 148—V. S. 3060—Acts 1894, No. 165.*

The rights of town and city officers to compensation for official services is
regulated by statute.

There is no authority in the general law for the payment of compensation
to aldermen, unless awarded by the voters of the city.

A provision in a city charter that, "the aldermen may receive compensation
for actual services, not to exceed thirty cents per hour," does not, even with
the additional provision that, "the administration of all fiscal, pruden-
tial and municipal affairs of said city, and the government thereof, shall
be vested in the mayor and the board of aldermen," authorize the alder-
men to determine their compensation; for it is not to be considered that
the legislature intended to violate the fundamental law that a man shall
not be a judge in his own case.

Petition for mandamus. Heard at the January Term,
1898, of the supreme court sitting for the County of Wash-
ington. Dismissed.

The petitioner alleged that he was an alderman of the city
of Barre, and that the petionee was its mayor; that the
petitioner as alderman had performed services, and his bill
had been approved by the city council, and that a warrant
had been issued in his favor by the city clerk and presented
to the mayor for his signature, which the latter had refused;
that the council had adopted a resolution that the aldermen
should be paid thirty cents an hour for actual services; and
that the mayor had failed to veto the resolution in legal
form, although he had returned it with his disapproval;
wherefore the resolution was in full force and effect; that
there was sufficient money in the treasury, not otherwise

appropriated, to pay the warrant; and prayed that the mayor be commanded to affix his signature.

Various matters were alleged in defense, but those upon which the case turned are shown by the opinion.

*George T. Swasey* and *George W. Wing,* for the petitioner.

*John W. Gordon* and *W. W. Lapoint,* for the petitionee.

TAFT, J. The words, "towns" and "selectmen," include cities and aldermen, and the law applicable to the inhabitants and officers of towns is applicable to the inhabitants and similar officers of all municipal corporations. V. S. 19, Acts 1896, No. 148, § 4. Selectmen of towns and aldermen of cities are similar officers. In regard to town officers, it was early held, "if no law of the state fixed their compensation or pay, their services must be gratuitous." *Boyden* v. *Brookline,* 8 Vt. 284. And by statute V. S. 3060, no claim for personal services as a town officer shall be allowed except when compensation is fixed by law or by vote of the town. The right of town officers to compensation for their official services is regulated by statute. *Barnes* v. *Bakersfield,* 57 Vt. 375. Every city charter in this State, as originally passed, save that of Vergennes, in 1788, contains a clause prohibiting the payment to the aldermen of any compensation for their official services. This is true even of the charter granted to but not accepted by the city of Burlington. Acts 1852, No. 85, § 2.

Except the Barre charter, but one other, that of Burlington, has been changed in this respect, and this change may be well kept in mind in the consideration of the question before us. Acts 1896, No. 148, § 24, provides that aldermen in that city, "shall receive such compensation for their official services as the legal voters of the city, at any meeting duly warned for that purpose, shall direct." This act is significant in recognition of the fact that unless specific provision is made by law for the payment of city officials, the power to pay or not to pay them is in the legal voters.

There is no authority in the general law for the payment of the petitioner and his colleagues, save in the voters of the city, and this case must turn upon the question whether there is any provision granting such authority in the Barre charter. In the original charter, granted in 1894, the last clause in § 5 reads: "No member of the board of aldermen shall receive any compensation for official services." In 1896 this section was amended by striking out the clause, and inserting in lieu thereof, "Members of the board of aldermen may receive compensation for actual services rendered, not to exceed thirty cents per hour." The precise question before us, is, under this clause in the charter, in whom is the power vested to determine whether the aldermen shall receive compensation, and, if so, to determine the rate per hour. In Acts 1894, No. 165, § 5, and the amended Act in 1896, it is enacted, "The administration of all fiscal, prudential and municipal affairs of said city, and the government thereof, shall be vested in the mayor and board of aldermen." Considering the course of legislation in regard to the payment of town officials, we hold that this clause has no reference to their compensation. If the city council had power under it to legislate in regard to the question before us, then all the sections in regard to compensation of city officials are superfluous, e. g. § 7 of the original charter, which provides that the city council shall fix the compensation of all city officers except as in the act it was otherwise provided. The term, city officers, in that section refers to the respective officers appointed by the city council. The compensation of the mayor, it is provided, shall be voted by the board of aldermen, not by the city council.

It is inconsistent for aldermen or other officials, to determine their own compensation. It is fundamental that a man shall not be a judge in his own case. It was early said that no man can serve two masters.

It was not the intent of the legislature, in granting the charter before us, that the aldermen of Barre should be

exceptions to the general rule so anciently declared by such high authority; had it been, the power would have been given them in express terms.   An alderman ought not to vote upon a question in which he has a direct personal interest.   This is in line with the course of all our decisions. One of the latest holds, that the prudential committee of a school district cannot employ himself as a teacher to teach the district school, and cannot in such a case recover upon a *quantum meruit.   Scott* v. *School Dist.,* 67 Vt. 150.

*Petition dismissed with costs.*