[Civil No. 2781. Filed February 25, 1929.]

[274 Pac. 786.]

J. W. TERRELL, Appellant, v. THE TOWN OF TEMPE, a Municipal Corporation, T. J. GOODWIN, T. A. BAILEY, HUGH E. LAIRD, J. L. FELTON, H. S. HARLESON, WALTER BUSBY and H. C. BABER, as Individuals and as Members of the Common Council of the Town of Tempe, and C. L. WALMSLEY, as Treasurer and Clerk of the Town of Tempe, and G. A. GOODWIN, FRED J. JOYCE, and DILWORTH BAIRD, in Their Individual Capacity, Appellees.

See Municipal Corporations, 43 **C. J.**, sec. 187, p. '191, n. 30, sec. 1158, p. 697, n. 86.

Officers, 46 **C. J.**, sec. 308, p. 1037, n. 92.

Messrs. Phlegar & Frazier, for Appellant.

Mr. Raymond H. Alexander, for Town of Tempe and Appellee Officials.

Messrs. Stockton & Perry, for Individual Appellees.

LOCKWOOD, C. J.—The town of Tempe was incorporated under Act 72 of the Laws of 1893 of the territory of Arizona, which said Act 72 in substance is now chapter 2, title 7, Revised Statutes of Arizona of 1913, Civil Code. On the 13th of November, 1924, the common council of said town passed the following resolution:

"Motion by Councilman Joyce was seconded by Councilman Busby and carried unanimously, all members present voting thereon, that the members of the common council of the said town of Tempe be paid for their services the sum of $5.00 each per meeting, same not to exceed 18 meetings per year and to begin with the present meeting."

From and after the passage of this resolution all defendants herein who have served as councilmen for the town received for their services the amount set forth in the resolution. This suit is an action by J. W. Terrell as a taxpayer asking for an accounting between the defendants and the town, and the restitution of any money received by them by virtue of the resolution. The case was submitted to the trial court on an agreed statement of facts, and judgment was rendered in favor of defendants, from which judgment this appeal is prosecuted.

There are some four assignments of error, which together raise but one question of law, and that is whether the resolution above set forth was without authority of law. In our consideration of the case we think it best to lay down certain general principles, and then apply these principles to the facts of the particular case. It is a well-settled rule that municipal corporations have no powers save those which are specifically granted them by the legislature or the Constitution, and such powers as are necessarily to be inferred from the powers granted. This question was decided by this court in the case of *Blount* v. *MacDonald,* 18 Ariz. 1, 155 Pac. 736. Therein we said, quoting from the opinion in *Atkin* v. *Kansas,* 191 U. S. 207, 48 L. Ed. 148, 24 Sup. Ct. Rep. 124:

" 'Municipal corporations are the creatures—mere political subdivisions—of the state, for the purpose of exercising a part of its powers. *They may exert only such powers as are expressly granted to them, or such as may be necessarily implied from those granted.* What they lawfully do of a public character is done under the sanction of the state. They are, in every essential sense, only auxiliaries of the state for the purposes of local government. They may be created, or, having been created, their powers may be restricted or enlarged, or altogether withdrawn, at the will of the Legislature; the authority of the Legislature, when restricting or withdrawing such powers,

being subject only to the fundamental condition that the collective and individual rights of the people of the municipality 'shall not thereby be destroyed.'" (Italics ours.)

The second general principle applicable is summed up in the saying that "no man may be judge in his own cause." This is so universally accepted that, so far as judicial tribunals are concerned, some of the great English judges have even held that it was doubtful if Parliament itself, with all its almost unlimited powers, could provide that a man might judge his own case. And in principle this rule should apply to any case where a public officer exercises official discretion in a matter which directly affects his own interest, unless there be some express constitutional or valid legislative authority for his act. In the case of *Kendall* v. *Stafford,* 178 N. C. 461, 101 S. E. 15, the court said:

"The public policy of the state, found in the statutes and judicial decisions has been pronounced against permitting one to sit in judgment on his own cause, *or to act on a matter affecting the public when he has a direct pecuniary interest,* and this is a principle of the common law which has existed for hundreds of years. 'It is an ancient maxim, applicable in all cases, civil or criminal, where judicial functions are to be exercised, whether in proceedings of inferior tribunals or in courts of last resort, that no man ought to be a judge in his own cause, a maxim which appeals with such force to one's sense of justice that it is said by Lord Coke to be a natural right so inflexible that an act of Parliament seeking to subvert it would be declared void.' 15 R. C. L. 527.

" 'Under the fundamental maxim that no one ought to be judge in his own cause, if we had no statute law upon the subject, no judge, whether probate or other, could take jurisdiction of any cause wherein he was a party or otherwise had a pecuniary interest. This principle is of universal application as a rule of the common law, and subject thereto must be the exer-

cise of all the powers of a judge. Broom's Legal Maxims, 118; 1 Hopkins, Ch. Rep. 1; 2 Strange's Rep. 1, 173. In accordance with this principle, in every grant of jurisdiction, it is always to be understood that the powers conferred are limited by the tacit exception that the judge is not to decide his own cause.' *Gregory* v. *Ellis,* 82 [N. C.] N. E. 226.

" 'The common law forbade a man being the judge of his own cause, as "if an act of Parliament give a man power to try all causes that arise within his manor of Dale; yet, if cause should arise in which he himself is a party, the act is construed not to extend to that, because it is unreasonable that any man should determine his own quarrel." 1 Blackstone, 91. . . . No one ought to be a judge in his own cause; and so inflexible and so manifestly just is this rule, that Lord Coke has laid it down that "even an act of Parliament made against natural equity, as to make a man a judge in his own case, is void, of itself; for *jura naturae sunt immatubilia* and they are *leges legum.*" This maxim applies in all cases where judicial functions are to be exercised, and excludes all who are interested, however remotely, from taking part in their exercise. It is not left to the discretion of a judge, or to his sense of decency, to decide whether he shall act or not; all his powers are subject to this absolute limitation; and when his own rights are in question, he has no authority to determine the cause.' *White* v. *Connelly,* 105 N. C. 70, 11 S. E. 179.

"In *Snipes* v. *Winston,* 126 N. C. 374, 78 Am. St. Rep. 666, 35 S. E. 610, which is approved in *Davidson* v. *Guilford County,* 152 N. C. 437, 67 S. E. 918, the aldermen of Winston elected one of their members, who participated in the meeting, a street boss at a salary of $50 per month, and the court declared the action of the board of aldermen void because of the pecuniary interest of one of its members, and said: 'This principle cannot be questioned and experience has shown its wisdom. Common reasoning declares this principle to be sound, and the public is entitled to have it strictly enforced against every public official.' " (Italics ours.)

So, also, in *Meeks* v. *Fink,* 82 Fla. 244, 89 South. 543, it was said:

"Municipalities are legal entities established for local governmental purposes and have and can exercise only such power as is conferred by express or implied charter provisions. The existence of authority to act cannot be assumed, but should be made to appear. To permit a public officer, without restriction or limitation to fix his own remuneration is to give him an extraordinary power. Under the Constitution (sec. 8, art. 8) the Legislature may confer upon the governing body of a municipality power to fix the salaries of its members, but before charter provisions are given this effect the intent to do so should be expressed in language the meaning of which is clear and unmistakable.

"In *Gregory et al.* v. *Jersey City,* 34 N. J. L. 429, in dealing with a similar city ordinance, passed pursuant to a city charter identical in substance and effect with the one under consideration, the court said: 'A legislative grant of power of a character so extraordinary as that which would enable the servant to fix his own remuneration must be carried in express words, or, at least, in language which will not admit of any other reasonable construction. In the absence of such clear terms it cannot be presumed that the Legislature intended to do an act as unwise as it is unusual and anomalous.'

"In *McFarland* v. *Gordon,* 70 Vt. 455, 41 Atl. 507 in considering a similar question, the court said: 'It is fundamental that a man shall not be a judge in his own case. It was early said that no man can serve two masters. It was not the intent of the Legislature in granting the charter before us that the aldermen of Barre should be exceptions to the general rule so anciently declared by such high authority.'

"It is true that the city charter contains provisions from which the right of the city council to fix the compensation of its own members might be inferred, but, construing such provisions in the light of fundamental, established principles, they cannot be held to confer such power. *Nothing less than a grant in ex-*

*press terms, or in terms about which there can be no reasonable question, should be given this effect."* (Italics ours.)

We think the general rule of law laid down in these two cases, to the effect that no man should act officially in a matter involving discretion, where he is personally interested in the result, meets the instinctive approval of every right thinking man. The sole exception thereto is where a superior has conferred, either expressly or by terms whose implication is unmistakable, such power upon the acting official. With these two principles to guide us, let us look to the statutes to determine if authority is found therein, either expressly or by positive implication, for the resolution complained of.

Counsel for defendants rely apparently upon the provisions of paragraphs 1832, 1834 and 1889, Revised Statutes of Arizona of 1913, Civil Code. These paragraphs, so far as material for this case, read as follows:

"1832. In addition to the common council, the officers of every town shall be a town clerk, town marshall and supervisor of streets."

"1834. The common council may prescribe the duties and compensation of all officers of the town, and provide, by ordinance, the manner of filling vacancies in such offices. They may require all such officers to give bond for the due discharge of their duties, in such sums, and with such security, as they may direct and approve, and for default of giving such security, may declare any office vacant."

"1889. No alderman, or councilman of any town, organized hereunder, shall, during the term for which he shall have been or shall be elected, accept, take or receive to his own use, from the town of which he shall be an alderman or councilman, any sum of money or other thing of value other than that which is, by this chapter provided to be paid to such alderman or councilman, for his services as such alderman or councilman. . . ."

The argument of defendants on these paragraphs in substance is as follows: Paragraph 1832 implies that the common councilmen are officers of the town. Paragraph 1834 expressly states that the common council may prescribe the compensation of all officers, and paragraph 1889, which limits the compensation of councilmen to what is prescribed ''by this chapter'' (which chapter contains paragraphs 1832, 1834), must impliedly refer to a compensation to be fixed under paragraph 1834, since the chapter contains no other provision as to the compensation of councilmen.

Paragraph 1889, *supra,* first appears in our statutes in the Session Laws of 1893 (No. 72, art. 10, § 2). Therein it read:

''No alderman or councilman . . . of any incorporated town or city in this territory . . . shall receive . . . any sum of money . . . other than that which is, *by the act incorporating such town or city,* provided to be paid . . . for his services as such alderman or councilman.'' (Italics ours.)

It was carried forward into the Code of 1901 (paragraph 605) with the same language. At that time a number of the cities of the territory, such as Phoenix, Tucson, Tombstone, and Prescott, were incorporated under special charters, and the effect, of course, was to prohibit the payment of salaries that were not provided for by the act incorporating the municipality, not only in towns incorporated under that particular chapter, but all others in the territory.

In the early history of Arizona all municipal charters were granted by special act, there being no general law covering the subject. In 1886 Congress passed what is known as the Harrison Act (48 U. S. C. A., § 1471), prohibiting territorial legislatures from granting special city charters. The Code of 1887 (tit. 9, c. 1) contained a method whereby then existing municipalities might establish another

form of corporate government, but no general law covering new municipalities was adopted till Act No. 72, *supra*. Legislatures as a rule do not adopt penal statutes until the necessity for meeting an already existing evil appears, and it is but reasonable to suppose, from the language of paragraph 1889, *supra*, that some of the councils of the already existing cities had assumed the power of voting themselves various sums as compensation for their services.

All these special charters contain provisions in substance, though not in form, similar to paragraphs 1832 and 1834, *supra*. If, as contended by defendants, such provisions imply the unlimited power in the council to vote themselves compensation, it was absurd for the legislature to provide solemnly that such power was *limited to the unlimited power already granted*. It is much more reasonable to infer that existing councils were assuming a power in themselves which did not exist, and that the legislature meant to prohibit such and all future councils from voting themselves compensation for their services, leaving that matter to the discretion of future legislatures by amendment of the general law. The language and punctuation of both the original and amended paragraphs express a *prohibition* on the council from receiving any sum as compensation for their services "other than that which is provided," not by vote of the council, but "by the act incorporating" or by "the provisions of this chapter." Had it been intended to authorize a new or confirm an existing power in the council, it would seem affirmative rather than negative language would have been used.

One of the canons of legislative construction is the interpretation placed on a given act by the various legislative, executive, and judicial bodies of the state. The statute of 1893 had been in force many years before any municipality incorporated thereunder at-

tempted to pay its councilmen salaries, and even to this date the majority of them do not do so. Questions similar to the one involved in this case have frequently arisen in other states, and the large majority of cases, where the common council were not explicitly given power to regulate their own salaries, have held that an implied power did not arise from charter provisions similar to those of paragraphs 1832 and 1834, *supra*. *Woods* v. *Potter*, 8 Cal. App. 41, 95 Pac. 1125; *State* v. *Mayor and Aldermen*, 34 N. J. L. 429; *McFarland* v. *Gordon*, 70 Vt. 455, 41 Atl. 507.

Counsel for appellees have cited to us, as supporting their position, the cases of *Diedrich* v. *Warren*, 213 App. Div. 406, 210 N. Y. Supp. 49; *Ripley* v. *Gifford*, 11 Iowa 367; *Bohart* v. *Anderson*, 24 Okl. 82, 20 Ann. Cas. 142, 103 Pac. 742. We are of the opinion that the contention is not well founded. In the Diedrich case, the court stated that an act of the legislature itself fixed a salary for councilmen and authorized the council to change all ''salaries . . . including [those] fixed by this act.'' In the Ripley case, the decision was merely that public officers were entitled to a reasonable compensation, to be fixed by the proper tribunal, in that case not the officer who claimed the compensation, but another and superior one. The same was the rule in *Bohart* v. *Anderson*, *supra*. We have been cited to no case where the governing body of a municipality could fix its own salary, where such power was not unmistakably given.

We are of the opinion that the statutes of Arizona do not expressly, or by such clear implication that no other reasonable inference may be drawn therefrom, give to common councils of the class of that of the town of Tempe the right to fix their own compensation.

The judgment of the superior court of Maricopa county is reversed, with instructions to enter judgment for the plaintiff below in accordance with the principles of law laid down in this opinion.

McALISTER and ROSS, JJ., concur.