[Civil No. 3261. Filed December 12, 1932.]

[16 Pac. (2d) 971.]

LOUIE E. GAY, Appellant, v. THE CITY OF GLENDALE, a Municipal Corporation, W. E. KALAS, Mayor of the City of Glendale, Arizona, and F. S. HEATWOLE, J. D. LYNCH, J. A. MILLER, W. F. MOORE, J. E. SMITH and JOE WHITNEY, as Individuals and as Members of the Common Council of the City of Glendale, a Municipal Corporation, and CLARENCE HAMMERBACKER, as Clerk and Treasurer of the City of Glendale, Arizona, a Municipal Corporation, Appellees.

Messrs. Gillum & Locke, for Appellant.

Messrs. Cunningham, Carson & Gibbons, for Appellees.

LOCKWOOD, J.—Louie E. Gay, hereinafter called plaintiff, brought suit against the mayor and the members of the common council of the city of Glendale to recover from them certain sums of money which plaintiff alleged they had received illegally from the funds of the city. The city in its corporate capacity and the city treasurer are formal parties, but the real defendants are the mayor and councilmen, and we shall so style them hereinafter. Defendants answered admitting that they had received certain sums not in excess of the amount sued for from the city, but alleging that they were entitled thereto by reason of the provisions of chapter 92, Session Laws 1929, and Ordinance No. 4 (New Series) of the city of Glendale, passed in pursuance of said chapter. After various motions to strike and certain demurrers were disposed of, the matter finally came before the court on an agreed statement of facts, and judgment was

rendered dismissing the action. From this judgment, plaintiff has appealed.

There are two matters to be considered by us on the appeal. The first is one of procedure only. The trial court at one time ordered the demurrer of defendants to be overruled and the answer to be stricken, and issued an interlocutory order requiring them to account for the moneys drawn by them as set forth in the stipulation of facts, but thereafter set aside such interlocutory order and its previous rulings on the motions to strike and the demurrers, and finally determined the case on its merits. It is contended by plaintiff that the trial court erred in setting aside the interlocutory order granting an accounting because it was without authority to vacate such order. We think, however, we need say no more concerning this objection than that since trial courts have the right, under section 3859, Revised Code 1928, to vacate and set aside any order for good cause shown, if the final judgment for defendants was correct, that of itself would show that good cause existed for setting aside the order, while if on the facts and the law plaintiff was entitled to recover, the case should be disposed of on the merits to prevent, if possible, a second appeal.

We therefore consider the case upon its merits. The suit was brought by plaintiff in his capacity as a taxpayer on behalf of himself and all others similarly situated. The statement of facts on which the case was heard reads as follows:

" . . . That the plaintiff *is* a taxpayer brings this action against the defendants W. E. Kalas, F. S. Heatwole, J. D. Lynch, J. A. Miller, W. F. Moore, J. E. Smith and Joe Whitney as individuals, and as members of the Common Council of the City of Glendale, Arizona, to enjoin them from receiving any further sums of money by way of compensation for

their services as such councilmen during their present terms of office, and to require them to account for and pay back into the treasury of the said City such monies as they have heretofore received by way of compensation.

"The City of Glendale, Arizona, is joined as a nominal party,. and Clarence Hammerbacker, as Clerk and Treasurer of the said City of Glendale; that prior to the 2nd day of June, 1930, the said City as authorized by Chapter 92, Session Laws of 1929, changed to a City form of government; that six of the defendants were inducted into office on or about the 8th day of July, 1930; that at this time there was no city ordinance authorizing the payment of compensation to the Mayor and Common Councilmen of the said City; that on or about the 8th day of July, 1930, the said seven defendants composing the Mayor and Common Council of the City of Glendale, adopted an Ordinance granting compensation to themselves for their services as such Mayor and Councilmen at the rate of $5.00 per diem for the performance of official duties, but which said compensation was not to exceed $600.00 per year for the Mayor, and $300.00 per year for the councilmen, and that since that date they and each of them have received sums of money under said ordinance, not exceeding, however, $600.00 per year for the Mayor and $300.00 per year for the Councilmen."

The question presented by the foregoing statement of facts is whether or not as a matter of law the receipt by the defendants of the sums of money set forth in the stipulation is illegal. The stipulation is very meager, and omits many of the facts referred to by both plaintiff and defendants in their briefs, and upon which their respective arguments are based. There is no transcript of evidence accompanying the record, and for this reason, except in so far as we are required to take judicial notice of such omitted facts, we cannot consider arguments based thereon.

Combining such judicial notice with the stipulation, the material facts of the case may be stated as fol-

lows: The town of Glendale was originally incorporated under the general law authorizing the incorporation of towns having a population of 500 or more inhabitants, and for many years continued its corporate existence under such law. During the month of January, 1930, the qualified electors of Glendale, in pursuance of chapter 92, Session Laws of 1929, adopted a city form of government, and the defendants were inducted into office as mayor and councilmen of the new city at some time on or about the 8th of July. It does not appear whether they were newly elected as such, or assumed their offices by reason of the fact that they had previously been the members of the town council and so were *ex-officio* members of the new city council under chapter 92, *supra,* but we think that to be immaterial in any case. Up to this time no compensation of any nature for the mayor and common council was authorized by ordinance of the town or city of Glendale. After their induction into office the defendants adopted Ordinance No. 4 (New Series) of the city of Glendale, which provided for compensation as set forth in the stipulation, and have since regularly collected such compensation in accordance with the ordinance. Were they legally entitled so to do?

Up to the adoption of chapter 92, *supra,* common councils of towns or cities incorporated under the general law of Arizona had no authority to fix or determine compensation in any form for themselves or their successors in office. *Terrell* v. *Town of Tempe,* 35 Ariz. 120, 274 Pac. 786. Had the statute as it was at the time of the decision of the case just cited remained unchanged, there can be no question that Ordinance No. 4 was illegal, and that defendants had no right to receive the compensation set forth therein.

In the Terrell case, however, we stated, in effect, that, if the legislature of Arizona authorized common

councils of towns or cities to provide for salaries for themselves, an ordinance or resolution so providing would be legal in so far as it was not contrary to express constitutional inhibitions. Following that decision, and apparently as a direct result thereof, the ninth legislature adopted chapter 92, *supra*. This chapter is an amendment of paragraph 386, Revised Code 1928, which is the section under which towns incorporated under the general law may assume a city organization, and which in substantially the same form had been the law ever since 1893. Chapter 92, so far as it is material for the purposes of this case, amended section 386, *supra,* to read as follows:

"When any town shall have acquired a population of three thousand or over and the town council of said town shall by resolution so declare, said town may by majority vote of the qualified electors assume a city organization having and exercising all rights, powers, authority, duties and privileges of a city under such municipal name as such council may designate.

"Upon the making of said change from town to city government, as hereinbefore provided, the officers of said municipality so changed, shall consist of seven councilmen elected at large by the qualified electors residing in such town at the regular election for town officers, which would have been held had such change not been made; a mayor elected by and from among the members of the council. . . .

"Pending the holding of the first regular election after such change, the officers of said municipality and their terms of office shall continue as theretofore and as though such change from town to city government had not been made. . . . Such city shall have and exercise all the powers herein contained and granted.

"Section 2. Whenever such change from town to city government shall be made as hereinbefore provided city councils of all cities changing from town to city government shall be and they are hereby empowered and authorized to appoint and remove

all city officers, board members, and employees not expressly made elective, in accordance with Civil Service regulations, or in absence of such, as said councils may deem fit or advisable; to fix the salaries of all officers, board members and employees, and of the mayor and councilmen; to require and fix official bonds; to prescribe and fix the duties of such officers, board members and employees and to fill by appointment all vacancies in the office of mayor or councilmen and all other vacancies occurring in any other city office, board or employment. In fixing salaries city councils may by ordinance or resolution prescribe a per diem to be paid to the mayor, councilmen and administrative board members for performance of official duties at not exceeding five dollars per day. Provided, however, that the total yearly salary of the mayor shall not exceed the sum of six hundred dollars per year, the yearly salary of council members shall not exceed three hundred dollars per year, and the yearly salary of board members shall not exceed one hundred dollars per year. Provided, further, that all regularly fixed salaries heretofore paid to municipal officers including board members, council members and mayor, under any regularly passed order or resolution by any municipality of the state, not contrary to any express prohibitions of the statute, or which shall be paid to such officers under such established regulations prior to the time when this act shall take effect, be and the same are hereby approved and validated."

The mayor and council of the new city of Glendale were therefore specifically authorized to fix salaries for their own offices, within the limits set forth in the chapter. Had the ordinance provided that the salaries so fixed should apply only to the successors of the council which adopted it, there can be no reasonable doubt that it would have been a valid exercise of the power given by chapter 92 to common councils of cities.

But it is contended, and this brings us to the vital issue in the case, that, while defendants were author-

ized to fix salaries for the mayor and common council, such ordinance could only affect their successors in office, under the provisions of section 17, part 2, article 4 of the Constitution, which read at the time of the adoption of the ordinance as follows:

"The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

We must then consider whether the ordinance in question increases the compensation of the mayor and city councilmen of Glendale within the meaning of the constitutional provision. In support of the contention that it does, counsel for plaintiff cites the cases of *City Council of Newburyport* v. *Mayor of Newburyport (Murphy et al.* v. *Page)*, 241 Mass. 575, 136 N. E. 70, and *State ex rel. Port of Seattle* v. *Wardall,* 107 Wash. 606, 183 Pac. 67. In the first case, the Supreme Judicial Court of Massachusetts says:

"To establish by original action a salary where hitherto none whatever existed is to make an increase. It augments the income of the recipient."

And in the Wardall case, the court, in discussing constitutional inhibitions against increase of compensation, says:

"It is as much a violation of their spirit and purpose to grant a salary where none was before provided as it is to increase an inadequate salary."

We have been cited to no cases which hold to the contrary, and we think both on reason and authority that the granting of compensation to any officer after he has commenced to serve the term for which he has been chosen, when no compensation was provided by law before he assumed the duties of his

office, is an increase of compensation within the constitutional provision above cited.

But, say defendants, while this rule might be held to apply had the town council of Glendale continued under its original form of government, when the city organization was assumed the members of the new council, even though they took their positions *ex officio* as being members of the town council, were nevertheless holding entirely new offices for which no compensation had ever been fixed, and therefore the constitutional provision would not apply to them. In support of this contention, they cite the cases of *Patty* v. *County of Greenlee,* 14 Ariz. 422, 130 Pac. 757, *Board of Supervisors of Yavapai County* v. *Stephens,* 20 Ariz. 115, 177 Pac. 261, and *Yuma County* v. *Sturges,* 15 Ariz. 538, 140 Pac. 504.

When the Constitution of Arizona was adopted, it was necessary that many of the territorial statutes affecting the duties and compensation of officers should continue in effect under the state organization until such time as the new state legislature could make the proper adjustments, and the Constitution so provided. Section 2, art. 22, Constitution of Arizona. On the other hand, certain provisions of the new Constitution automatically repealed part of the territorial legislation, and left various hiatuses which it became necessary to supply promptly. For this reason, the makers of the Constitution provided in section 4, article 12, as follows:

"The duties, powers, and qualifications of such officers shall be as prescribed by law. The Board of Supervisors of each county is hereby empowered to fix salaries for all county and precinct officers within such county for whom no compensation is provided by law, and the salaries so fixed shall remain in full force and effect until changed by general law."

It will be seen that boards of supervisors were given the power to fix the compensation only of offi-

cers "for whom no compensation is provided by law," and we held in the Patty case that whenever the continuing territorial statutes provided for *some* salary the board of supervisors had no authority to change the existing compensation. This was all that was necessary for us to say in passing upon the specific matter then submitted to us. We, however, went further and quoted approvingly from the case of *Rucker* v. *Supervisors*, 7 W. Va. 661, the following language:

"In *Rucker* v. *Supervisors*, 7 W. Va. 661, which arose under section 9 of article 3 of the Constitution of West Virginia, which provides that the compensation of public officers shall not be increased or diminished during their term of office, it was held that this language in the Constitution applies only to such salaries or compensation of public officers as have been definitely fixed or prescribed by law, either by the Constitution of the state, or by some statute made in pursuance thereof. If the ordinances of a city are not laws, within the meaning of this clause in the Constitution, much less so are the orders or agreements of the county commissioners and county auditors in regard to the treasurer's salary. The obvious meaning of the Constitution is that the General Assembly should regulate (that is, ascertain and establish) the compensation which should be paid to the respective county treasurers, and that thereafter 'no law' (that is, no act of assembly) should increase or diminish their respective salaries during the term for which they were elected."

And it is argued that the Rucker case holds that the increase of a salary by ordinance of a city is not an increase prohibited by section 17, *supra*, of the Constitution.

Be that as it may, in the later case of *State Consol. Pub. Co.* v. *Hill*, 39 Ariz. 21, 3 Pac. (2d) 525, we held expressly that the constitutional inhibition applied to all salary fixing bodies, including city councils.

In the Stephens case, *supra,* we held that the territorial statutes which continued the salaries of certain county officers were not enacted pursuant to the Constitution, nor were they subject to the provisions of section 17, *supra,* but this holding was based expressly on section 2, article 22 of the Constitution, and section 3, article 12, which read respectively, so far as material, as follows:

"All laws of the Territory of Arizona now in force, not repugnant to this Constitution, shall remain in force as laws of the State of Arizona until they expire by their own limitations *or are altered or repealed by law. . . .* "

"*Subject to change by law,* there are hereby created in and for each organized county of the State the following officers who shall be elected by the qualified electors thereof: Sheriff, Recorder, Treasurer, School Superintendent, County Attorney, Assessor, County Superintendent of Roads, and Surveyor, each of whom shall be elected for a term of two years. . . . "

In view of such provisions, the salaries fixed under the territorial law were held to be temporary only and subject to their being revised by the state legislature without a violation of section 17, *supra.* It will further be noted that the decision in the Stephens case on this point was by a majority only of the court. The case of *Yuma County* v. *Sturges, supra,* in our opinion in no way applies to the present case either on the facts or the law.

We therefore are of the opinion that the Arizona cases cited by defendants in support of their position that since no compensation had been fixed previously the legislature could authorize the new council to fix such compensation for themselves beginning during their existing terms of office, and that chapter 92, *supra,* did so authorize them to act, are not in point, for the reason that the authority held to be granted to boards of supervisors in the Patty case and to the legislature in the Stephens case came from express

constitutional provisions which we held to be special exceptions to the general one.

Defendants also rely strongly on the case of *Rockwood, Mayor of Cambridge,* v. *City of Cambridge,* 228 Mass. 249, 117 N. E. 312. In this case it was indeed held that city councils in the circumstances set forth herein had the right to fix their own salaries for their existing term of office. It will be noted, however, that the prohibition in Massachusetts of an increase in the salaries referred to in the Rockwood case was a *statutory* one. It presents precisely the situation found in the Patty and Stephens cases, *supra,* where the general rule and the special one both rested on the same authority, and the rule of construction that where there is a special provision in apparent conflict with a general one, the special provision shall be deemed an exception to the general rule was applied.

In the present case, however, defendants are attempting to urge a special implied *statutory* exception as against a general express *constitutional* provision. This, of course, cannot be done. For the foregoing reasons, the city council of Glendale was without authority to adopt an ordinance granting them any compensation during their existing terms of office, and since such a construction of the ordinance is the sole authority on which they base their claim to the amounts involved in this action, their acceptance of compensation as stipulated was illegal. For the foregoing reasons, the judgment of the superior court of Maricopa county is reversed and the case remanded for a new trial in accordance with the opinions expressed herein.

McALISTER, C. J., and ROSS, J., concur.