### DERHAMMER, Plaintiff, v. MEDINA CO. BOARD OF COMMISSIONERS, Defendants.

Common Pleas Court, Medina County.

No. 13146. Decided November 19, 1948.

Harold W. Houston, Urbana, and Harold L. Williams, Medina, for plaintiff.

Wm. G. Batchelder, Jr., Pros. Atty., Medina, for defendants.

## OPINION

By KELLOGG, J.

This case came for consideration by this Court upon the petition of Cloyd W. Derhammer, Judge of the Juvenile Court of Medina County, Ohio, for a declaratory judgment and the joint answer of the defendants Charles F. Fuller, Elno R. Stauffer and Clare Eastwood as the Board of County Commissioners of Medina County, Ohio, H. Burke Woodward, County Auditor, and Lloyd B. Leatherman, County Treasurer, and was submitted upon an agreed statement of facts and briefs of counsel.

The parties agree that the plaintiff is the duly elected, qualified and acting Judge of the Juvenile Court by virtue of having been duly elected and qualified as Probate Judge of Medina County, Ohio, at the general election held Nov. 4, 1946 to fill the unexpired term of the office of Probate Judge which will expire Feb. 9, 1949, and has been the Judge of the Juvenile Court at all times since.

Parties also agree as to the official qualifications, duties and capacity of the defendants, and that Medina County has one Common Pleas Judge, the present incumbent being Windsor E. Kellogg, who was appointed on or about May 26, 1947 and qualified May 31, 1947, to succeed the Hon. John D Owen, deceased, the latter having been previously elected to the said office for a term of 6 years to expire Dec. 31, 1950, the appointive term of the said incumbent being to serve until the election of a successor to the unexpired term at the general election Nov. 2, 1948.

The parties agree this action is brought by plaintiff as Juvenile Judge for construction and interpretation of this Court as to his status and rights and as to salary which has attached or will attach to the office which he holds as said Juvenile Judge and to obtain a declaratory judgment and such further orders and judgments as will afford complete relief as to any salary rights the Court may find vested in him.

It is also agreed that the annual salary of the Common Pleas Judge for the present appointive term is $3991.—and that of the plaintiff as Probate Judge is $3585.—, and that at the time the plaintiff qualified and entered on his duties as Juvenile Judge no salary, allowance, fees or compensation of any kind for the office of Juvenile Judge of Medina County had ever been fixed or established by the General Assembly of Ohio

That the Common Pleas Court is requested to take judicial notice of all applicable enactments of the General Assembly and all applicable provisions of the Constitution of the State of Ohio, including among others, §1639-7 and 1639-7A GC as amended effective Sept. 18, 1947, Sec. 7 of Art. IV of the Constitution as amended at the General Election Nov. 4, 1947, Sec. 20 of Art. II, Sec. 1 of Art II, Sec. 1 of Art. IV of the constitution and H. B. 495 which was the general appropriation bill enacted by the 1st session of the 97th General Assembly appropriating $375.—for year 1947 and $1500.—for year 1948 to each Juvenile Court for the current biennium.

That Dec. 23, 1947 the Auditor of State distributed to the counties described and referred to in §1639-7 and §1639-7A GC, including Medina County, funds from the State Treasury into County Treasury in accordance with said appropriation, which funds were identified as being for the sole use of the Juvenile Court.

That plaintiff commencing with the month of Oct. 1947 and for each month thereafter has made formal demand upon the defendants for salary as Judge of Juvenile Court and requested the defendant Auditor to issue an official warrant on the defendant Treasurer to the end that the plaintiff would receive and be paid beginning with month of Oct. 1947 a salary of $125.—per month or such portion thereof as constituted the lawful salary of the plaintiff as Juvenile Judge, and that plaintiff has fully discharged his duties and money is available, but that said defendants have failed or refused to pay said salary or any part thereof and plaintiff has received no salary as Juvenile Judge.

That said Juvenile Court actually functions as to jurisdiction, duties, powers, personnel, methods or procedure, records, etc. separately and independently of the Probate Court of Medina County, Ohio, and that at all times referred to in plaintiff's petition and at the present time there have been maintained in said Juvenile Court separate official records, including an appearance docket, journal, cash book, etc. as provided by law.

And the parties further finally agree that such further facts as may be alleged in plaintiff's petition and which are not conclusions and which may be necessary in the opinion of

the Court to a final determination of the issues are admitted.

Since submission of the case, at the general election, Nov. 2, 1948 the said plaintiff was duly elected Judge of the Probate Court of Medina County for a term of 6 years, as provided by amended **Art. IV, Sec. 7** of the **Constitution,** such term to begin Feb. 9, 1949 and the said Common Pleas Judge was elected to an unexpired term ending Dec. 31, 1950 and qualified as such Nov. 19, 1948.

This Court finds it has jurisdiction of the parties and the subject matter and that there is presented a justiciable controversy as to which plaintiff is entitled to a declaratory judgment defining his rights. **Art. IV Sec. 4 of Constitution, §11215 GC, §12102 et seq GC.** Moreover, this has not been denied by any of the parties.

Amended S. B No. 50 amended §1639-7 GC and enacted supplemental §1639-7A GC to read as follows:

"**Sec. 1639-7 GC.** The juvenile court or court of common pleas, division of domestic relations of any county, separately and independently created, established and functioning as such by law, shall have and exercise the powers and jurisdiction conferred in this chapter. Except in counties in which there now is, or may hereafter be created, a separate and independent juvenile court or court of domestic relations, there is hereby established and created within the probate court, a juvenile court, presided over by the probate judge, which shall be a court of record, and which shall exercise such powers and jurisdiction. The judge of such court shall receive such compensation as may be provided by law.

Whenever the judge of the court exercising the powers and jurisdiction conferred in this chapter is absent from the county, or is unable to attend court, or the volume of cases pending in court necessitates it, and upon request of said judge, the presiding judge of the common pleas court shall assign a common pleas judge of the county to act in his place or in conjunction with him. In the event no such common pleas judge is available for said purpose, the chief justice of the supreme court of Ohio shall assign a common pleas judge, a juvenile judge or a probate judge from some other county to act in the place of such judge or in conjunction with him, who shall receive such compensation and expenses for his services as is provided by law for judges assigned to hold court in courts of common pleas."

"**Sec. 1639-7A GC.** In all counties where the state is not paying a salary direct to the judge exercising the powers and jurisdiction conferred in this chapter the state shall pay into

the county treasury of the county, wherein such judge was elected, the sum of $1500.—annually. The juvenile judge in such counties shall receive as his annual compensation fifteen hundred dollars. Provided that the combined salaries, allowances and compensation, of the probate judge and juvenile judge of said county shall not exceed the total salary provided by law for a common pleas judge in said county. Any unused portion of said fund shall remain in the county treasury to be used in the maintenance and operation of the juvenile court."

These enactments, effective Sept, 18, 1947, do not make any exception excluding incumbent judges, and together with H. B. 495 appropriating funds for payment of such salary for Juvenile Judge and amended **Art. IV, Sec. 7** of the **Constitution** adopted by electorate of Ohio Nov. 4, 1947 clearly indicate a legislative plan and intent to make the provisions of §1639-7A **GC** effective starting with the month of Oct. 1947, and, with the payment of the required amounts into the county, the main question for determination is whether there is any reason that the plaintiff can not legally receive the amount provided as salary for the juvenile judge.

Under date of Aug. 20, 1947 the Attorney General of Ohio rendered Opinion No. 2159 on the request of the Prosecuting Attorney of Columbiana County, holding that in that county the Probate Judge who is also performing the functions of Juvenile Judge could receive no additional salary during his present term of office. In that county the salary of the Probate Judge already exceeds that of the Common Pleas Judge, and since Sub. S. B. No. 223 had amended §2251 **GC** to provide $1,000.—additional for the salary of each Common Pleas Judge, effective at the end of the incumbent's term, the question asked by the prosecutor was whether the Probate Judge (and the Juvenile Judge) could now receive salaries, etc. equal to the amount the Common Pleas Judge would be entitled to later. The Attorney General's opinion in the negative stated two reasons: (1) That **Sec. 20 of Art. II** of the **Constitution** applies and which reads as follows:

"The General Assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term, unless the office be abolished."—

and such application was based on the case of **Lueders v. Beaman, 106 Oh St 650** in which the Court denied the right

of a Probate Judge to receive payment of certain fees in inheritance tax cases provided by statute enacted during his term of office. And (2) because the Probate Judge of Columbiana County was already receiving more than the Common Pleas Judge and the raise in the Common Pleas Judge's salary to be effective later can have no effect on the salary of the Probate Judge now.

As a result of this opinion, and in absence of any specific court decision, the defendant officers of Medina County and such officers in other counties have been unable to make payment to the Juvenile Judge of the salary provided, because of the risk of findings being made against them by state examiners.

**Art. IV Sec 1 of the Constitution of Ohio** provides:

"The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas, courts of probate, and such other courts inferior to the courts of appeals as may from time to time be established by law."

The Juvenile Courts in Ohio were not created by the Constitution, but are statutory courts, established under §1639-1 et seq GC.

The legislative intent to make the salary of the Juvenile Judge effective Oct. 1, 1947 is controlling in the absence of constitutional conflict. Before any legislative power expressed in a statute can be held invalid, it must appear that such power is clearly denied by some constitutional provision. **Williams v. Scudder, 102 Oh St 305.** The power to fix salaries of public officers is conferred on the Legislature by the general grant of legislative power in **Art. II, Sec. 1, Art. II, Sec. 20,** and **Art. IV, Sec. 14.** It must be presumed when the Legislature enacts a statute, it has in mind all the constitutional provisions applicable to the subject matter thereof. **State v. George, 92 Oh St 344.**

There is no constitutional inhibition as to attaching a salary to a new judicial office. **Art II, Sec. 20** might well be construed as making mandatory on the Legislature in cases not provided for in the Constitution that it (1) shall fix the term of office, and (2) shall fix a compensation of all officers. Although after this compensation has been fixed, it shall not be changed during an existing term, it must first be fixed. By indirection the term of office of Juvenile Judges is governed by the Constitution for the reason that Juvenile Courts have been variously set up within the framework of the Common Pleas Court and the Probate Court, but not only the power

but the duty to fix and establish the salary of Juvenile Judges is vested solely in the Legislature. Until and unless the Legislature has acted to create a salary, it can not be said to have increased, diminished or changed a salary which is non-existent.

The Legislature had created a Juvenile Court, or Court of Common Pleas, Division of Domestic relations and had fixed the term of office; the Legislature had fixed the compensation of the Juvenile Court, Court of Common Pleas, Division of Domestic Relations; and the Legislature had created a Juvenile Court within the Probate Court in the other counties of the state and had fixed the term of the Judge of Juvenile Court, but the Legislature had failed, prior to passage of Am. S. B. 50, (§1639-7 & 1639-7A GC), as far as the Juvenile Court within the Probate Court is concerned, to fix the compensation of the Juvenile Judge, but the constitutional power and duty were continuing until exercised and had remained alive but dormant.

If the General Assembly had intended to require the Juvenile Judge to serve for the compensation previously provided for the Probate Judge, it should have affirmatively so legislated, and in the absence of such legislation there was simply a failure to perform a constitutional duty which was continuing. Rather than contending that the incumbent judge entered the office knowing that no salary was provided, it must be concluded that he had presumptive knowledge that the Legislature could and should fix compensation for the Juvenile Judge.

In the case of **Lueders v. Beaman, 106 Oh St 650,** on which the Attorney General's opinion previously referred to is based, the question was whether there could be a change of salary of the Probate Judge by an act passed during term, and this case shows a confusing conflict in the reasoning of the Judges even on such a question. Only three of the five judges joining in the decision held such compensation could not be allowed whether or not additional duties had been assigned, and two of these five denied such compensation because the duties of Probate Judges were not increased or new duties assigned them contemporaneously with the passage of the act.

On the other hand there is no constitutional inhibition against a Judge of the Probate Court serving also as judge of an independent court and receiving compensation therefor if there is no conflict in duties or jurisdiction. **Art. IV, Sec. 14; State ex rel. Metcalfe v. Donahey, 101 Oh St 40; Fulton v. Smith, 99 Oh St 230.** The Lueders case can hardly be

stretched to apply to the situation where the Legislature has previously created a new Court, but has not previously fixed the compensation of the Judge.

A constitutional or statutory provision prohibiting a change of compensation during term of office does not apply where, prior to such time no salary or compensation has been fixed for the office, and compensation can be fixed after the officer has entered on his duties. State ex rel Taylor v. Carlisle, 16 O. D. 263, (also see 15 O. D. 287 & 18 O. D. 289); Wise v. Barberton, 20 C. C. N. S. 390; Schreiner v. Madigan, 31 O. C. D. 504; 32 O. Jur. pg. 1029, Sec. 169; 139 A. L. R. pg. 741; 144 A. L. R. pg. 689; 46 C. J. pg. 1025 et seq; Gwynn v. McKinley, 30 Cal. App. 381, 158 P. 1059; State ex rel Reardon v. Harper, 33 Okla. 572, 123 P. 1038; Hughes v. Oklahoma County, 50 Okla, 410, 150 P. 1029, (writ of error dismissed in 243 U. S. 625, 61 L. ed. 935, 37 S. Ct. 400); Harper v. Oklahoma County, 54 Okla, 545, 149 P. 1102, (modified on rehearing on other grounds in 54 Okla. 555, 154 P. 529, writ of error dismissed in 243 U. S. 631, 61 L. ed. 938, 37 S. Ct. 477); Shearer v. Flannery, 68 Cal. App 91, 228 P. 549.

The Juvenile Court is a separate and distinct court, even though "within the Probate Court". It was so held in the case of In re Morningstar, 24 O. O. 123, where it was the decision that statutes relating to appeal from Probate Court did not apply to Juvenile Court. The jurisdiction and powers of the Juvenile Court as created and set forth in §1639-1 et seq GC have no relation to the jurisdiction of the Probate Court as fixed by law, nor are they enlarged or restricted by the Law of Ohio governing Probate Courts. The Probate Judge is required as ex-officio Clerk of said Court to file a bond, and the Juvenile Judge, as ex-officio Clerk of that Court is required to file a separate bond. The Probate Court and Juvenile Court have separate official seals as provided by law. The right to appoint employees in the two courts is governed by separate statutes and these separate sections for the giving of bond by the employees of each court each provide a distinct and different result as to the remaining liability of each judge for the acts of such employees. The right of each judge to require appropriations for each court is under a separate section, and the authority is not the same. The method of invoking jurisdiction, for citation of parties, for service of notices, warrants and subpoenas and the manner of hearing are separate and distinct. For each court a separate appearance docket, journal, cash book and records are kept, and, in counties where available, separate hearing rooms and even a separate building for the Juvenile Court are maintained. Sec. 10501-12 GC provides when a Probate Judge

is absent from the county, etc. a Common Pleas Judge of that county may preside, and if none is available a Common Pleas Judge of another county may be assigned by the Chief Justice of the Supreme Court, but §1639-7 GC provides that when a Juvenile Judge is absent, etc. and no Common Pleas Judge of that county is available the Chief Justice of the Supreme Court may assign a Common Pleas Judge, or a Juvenile Judge or a Probate Judge from another county. Other specific examples could be given to demonstrate the separateness of the two courts, but none are more convincing than the entirely unrelated types of subject matter dealt with by the two courts, and the totally different manner of handling cases. The Juvenile Court has an importance in its own right and in many counties the duties of the Juvenile Judge are greater and take more time than those of the Probate Judge.

Even where there are not two distinct offices involved and additional duties not germane or incident to an office are imposed upon the incumbent, the constitutional inhibition does not apply. 32 O. Jur. pg. 1027; 21 A. L. R. 258; 51 A. L. R. 1522.

It is also interesting to note and compare the method by which, as a result of the enactment of §5348-2b GC by the same 97th General Assembly, an increase in the compensation of county auditors in this state has been effected by payment for services in connection with inheritance taxation. These increases are being paid, and no question has been raised.

In view of all the foregoing considerations this Court holds that the plaintiff is the incumbent of the office of Juvenile Judge for which no compensation had ever been fixed and that by virtue of the failure of the Legislature to have ever acted upon its power to fix such salary it could properly do so after the plaintiff had entered into his duties without violating the constitutional inhibition, and that the plaintiff is entitled to such compensation as the Legislature has provided.

The next question is as to the amount of salary to which the plaintiff is entitled, not only in the past since such compensation was provided, but presently and in the future. Sec. 1639-7A GC provides that the juvenile judge shall receive as salary $1500.—or so much thereof as will make the combined salaries, allowances and compensation of the Probate Judge and Juvenile Judge an amount not exceeding the total salary provided by law for a Common Pleas Judge in said county. The primary rule in the construction of statutes is to give effect to the intention of the Legislature, 37 O. Jur. pg. 480 par. 257. To determine such intent Am. S. B. 50, (§1639-7 & 1639-7A), effective Sept. 18, 1947, and Sub.

S. B. 223, (§§2251, 2252, 2253-2 & 5348-10A GC), effective Sept. 20, 1947, must be considered together. The Legislature in first creating compensation for Juvenile Judges was at liberty to select any constitutional formula or legal yardstick to measure that compensation, and since the Legislature is presumed to have known that the salary of the Common Pleas Judge of the county by the provisions of Sub. S. B. 223 would legally be increased during the term of the Probate Judge and Juvenile Judge, the aggregate compensation of the Probate Judge and Juvenile Judge is governed solely by the ceiling that it shall not exceed the legal salary of the Common Pleas Judge at the time of any stated salary payment. Basing a salary upon a formula whereby a definite mathematical amount can always be ascertained has been recognized, but of course, now the formula for the first provision of compensation for Juvenile Judges has become effective, the formula itself, if later changed, cannot affect the amount of compensation during term. **State ex rel v. Guckenberger; 139 Oh St 273, 39 N. E. 2nd 840, 139 A. L. R. 728.**

Sub. S. B. No. 223 by amending §2251 GC provided, "that from and after the expiration of the term of office of any Judge of the Common Pleas Court holding office on the effective date of this act, (Sept. 20, 1947), such annual salary shall be four thousand dollars." Under §2251 GC such salary was $3000.—Since it has been definitely held by the Supreme Court of Ohio that under the phrase "during his existing term" as used in **Sec. 20 of Art. II of the Constitution** the constitutional inhibition as to change of salary applied strictly to the term to which an officer is appointed or elected, and not to the period constituting the statutory term of office, the Common Pleas Judge of Medina County, elected to an unexpired term on Nov. 2, 1948, will receive a salary of $4991.— per year, starting with the date of his qualification, Nov. 19, 1948. **State ex rel Ferguson, 148 Oh St 581, Zangerle v. State, 105 Oh St 650, State ex rel v. Guckenberger 139 Oh St 273 at pg. 276,** State ex rel Pugh v. Tanner, 27 O. C. A. 385, Bordenkircher v. Lingrel, Auditor, 29 N. P. N. S. 559 at pg. 562. Therefore the ceiling applying to the aggregate compensation of the Probate Judge and the Juvenile Judge of Medina County will automatically rise to $4991.—per year from Nov. 19, 1948.

This Court in this case does not feel called upon, however, to determine the question as to what effect a further increase in the salary of Common Pleas Judges by subsequent future legislation might legally have upon the ceiling for aggregate compensation when enacted during the term of a Probate Judge and Juvenile Judge.

The question has been raised by at least one legal commentator in the state as to whether §1639-7A GC places a limitation on the salary of a Probate Judge who is already receiving more salary for the office of Probate Judge alone than the salary of the Common Pleas Judge in the same county. Careful analysis can bring only the definite conclusion that the indisputable legislative intent was only to place a limit on the part of the $1500.—that might be received as salary as Juvenile Judge. All salaries, allowances and compensation for the office of Probate Judge would first be ascertained, and the total compared with the salary of the Common Pleas Judge at the time to determine what part of $1500.—the Juvenile Judge would be entitled to as salary. The question of the application of the provisions of §5348-10 GC as amended by Sub. S. B. 223, effective Sept. 20, 1947, is raised by the pleadings and briefs of counsel. Since the salary provided for Probate Judges in lieu of inheritance tax fees was already effective Feb. 9, 1945 under this section before this last amendment, it is clear that such salary must be included in the aggregate before comparison is made with the Common Pleas Judge's salary to determine the salary of the Juvenile Judge, and that the limit of three thousand dollars would apply only to the amount of salary provided under §5348-10a. As to the question of the effect of the amendment raising the limitation to four thousand dollars in counties of over 200,000 population after the term of the incumbent Probate Judge, and providing that in no case shall the total exceed twelve thousand dollars per annum, these provisions would apply only to the amount of salary of the Probate Judge under §5348-10A GC and the basic salary of the Probate Judge under §2992 GC, but such question is certainly not a real question in Medina County, and is in fact a moot question inasmuch as there are no counties in the state with a population of anywhere near 200,000 that do not already have a Division of Domestic Relations in the Common Pleas Court, and hence §1639-7A GC would not be applicable or in question.

Under §2252 GC the salary of the Common Pleas Judge, and under §2992 and §5348-10A GC the salary of the Probate Judge will change with the 1950 Census. **State ex rel v. Guckenberger 139 Oh St 273.** These changed salaries will then be used in applying the formula for determining the compensation of the Juvenile Judge provided by §1639-7A GC, and the Juvenile Judge will be compensated accordingly.

Therefore, in summary, this Court holds that the plaintiff, Cloyd W. Derhammer, is entitled to receive salary as Juvenile Judge at the rate of $406.—per year for the period commencing

Oct. 1, 1947. and at the rate of $1406.—per year for the period starting Nov. 19, 1948, and after the 1950 Census is effective the amount resulting from the application of the formula enacted in §1639-7A GC to the salaries of the Common Pleas Judge and Probate Judge as established by such Census.

Judgment for Plaintiff Accordingly.